Filiberto Guerrero FIALLO,
Plaintiff, Appellant,

v.

Irba Cruz de BATISTA, et al.,
Defendants, Appellees.

No. 80–1642.

United States Court of Appeals,
First Circuit.

Submitted June 5, 1981.

Decided Dec. 17, 1981.

Vilma Santiago Irizarry, Nora L. Rodrigues Matias, and Ivonne Diaz De Carreras, Rio Piedras, P. R., on brief, for plaintiff, appellant.

Hector A. Colon Cruz, Sol. Gen., and Lorraine Riefkohl De Lopez, Asst. Sol. Gen., Dept. of Justice, San Juan, P. R., on brief, for defendants, appellees.

Before COFFIN, Chief Judge, ALDRICH and BREYER, Circuit Judges.

COFFIN, Chief Judge.

Plaintiff is an inmate at the Guayama Regional Detention Center in Puerto Rico. In this appeal, we are asked to determine whether a federal cause of action may be founded either on the Corrections Administration's failure to transfer him to a residential drug treatment facility or on the disappearance of plaintiff's photographic equipment from a prison official's custody.

In June, 1978, plaintiff wrote a letter to a judge of the district court, who referred it to a U.S. Magistrate for his recommendations. The Magistrate found that the letter made three allegations: (1) that the plaintiff had requested and received a recommendation to be transferred to a drug rehabilitation center and six months had transpired without any action on this request, (2) that his mail was being interfered with,

and (3) that he had been physically threatened by a prison official. The Magistrate recommended that the letter be filed as a civil rights complaint and that a legal services attorney be appointed to represent plaintiff. This recommendation was approved, and plaintiff filed a formal complaint on October 6, 1978. This complaint named as defendants five supervisory officials of the Corrections Administration, refined the three factual allegations made in the letter into formal claims for relief, and included two additional claims—that illegal restrictions had been imposed on plaintiff's visitation rights and that $2,800 worth of plaintiff's photographic equipment had been lost or stolen while in the defendant's possession. Before trial, plaintiff agreed to have three of his claims (pertaining to mail interference, official threats, and visitation rights) tried as part of a separate class suit. The district court then dismissed plaintiff's other two claims (pertaining to transfer and property loss) for failure to state federal causes of action. On appeal, plaintiff argues that the district court erred in not recognizing a federally protected right to transfer to a drug rehabilitation center, in not considering the property loss claim, and in reaching its conclusions so summarily. We find no error.

Plaintiff suffers from drug addiction. He received treatment in institutional programs at the prisons where he was incarcerated. Desiring more comprehensive therapy, he sought to be transferred to a residential drug treatment facility operated by the Commonwealth's Department of Addiction Services.[1] On June 11, 1978 the Classification and Treatment Committee of the Guayama Detention Center recommended plaintiff's transfer to a residential drug-addiction rehabilitation center. His case was referred to the Inter-Agency Transfer Committee for approval. On June 22, 1978, the Transfer Committee requested psychiatric and psychological evaluations from the Classification, Diagnosis and Treatment Center of the Corrections Administration. The Center recommended that, in light of plaintiff's chronic addiction problems and anti-social personality traits, he remain in an institution where he could receive group therapy and vocational training. On September 18, 1978, the Classification and Treatment Committee transferred plaintiff to the Ponce District Jail, so that he could receive additional addiction treatment and vocational courses. On November 23, 1979, the Transfer Committee finally denied plaintiff a transfer to a residential treatment facility, based on "his past criminal history, nature of crimes and circumstances of these."

Plaintiff's specific claim is that he has a right to receive treatment for his drug addiction at the residential facility operated by the Department of Addiction Services. Plaintiff's argument casts this right in two alternative forms: as part of a general constitutional right to rehabilitation and as a liberty interest protected by the due process clause. Accepting all of plaintiff's factual allegations as true, we are unable to find that he has been deprived of any constitutional right.

■ We are unaware of any authority for the proposition that a prison inmate has a federal constitutional right to rehabilitation. Indeed, all indications appear to be to the contrary. *See Hutto v. Finney*, 437 U.S. 678, 686 n.8, 98 S.Ct. 2565, 2571 n.8, 57 L.Ed.2d 522 (1978); *cf. Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (restrictive jail conditions alone are not constitutional violation). At the very most, rehabilitation is but one of several, equally legitimate, penological purposes. *See Nadeau v. Helgemoe*, 561 F.2d 411, 414 (1st Cir. 1977). Plaintiff notes that

---

1. The Department of Addiction Services was created as an executive-level department within the Commonwealth government by P.R. Laws Ann. tit. 3, § 401 (1979 Supp.). Under section 401m, the Secretary of this Department is given the duty to implement a program for treating addicted inmates who are under the custody of the Corrections Administration. The Secretary may establish programs for treatment within correctional institutions and the Corrections Administration may transfer inmates to other facilities for treatment under the Secretary's direct supervision.

the Commonwealth, in its Constitution, has made rehabilitation its preeminent corrections goal.[2] But whatever rights the Puerto Rico Constitution may confer on plaintiff—rights that he could presumably vindicate in a Puerto Rico court—it does not create any *federal* right to rehabilitation.

The substantive federal right most closely implicated by plaintiff's allegations is the Eighth Amendment right not to be denied necessary medical treatment, a right which encompasses drug addiction therapy. *E.g., Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 760–61 (3d Cir. 1979) (denial of methadone treatment to pretrial detainees). The facts of plaintiff's case, however, fall far short of stating an Eighth Amendment claim. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Here plaintiff clearly does not allege deprivation of essential treatment or indifference to serious needs, only that he has not received the type of treatment which he desires.

Plaintiff also argues that his Fourteenth Amendment right to due process was violated. He contends that Puerto Rico's Constitution and statutes endow him with a justifiable expectation that he will be transferred to a residential drug treatment center. He contends further that this expectation amounts to a liberty interest protected by the due process clause.

Plaintiff's first source of allegedly justified expectations is the Puerto Rico Constitution's provision adopting a rehabilitative goal. *See* note 2 *supra*. Yet this provision provides only for "adequate treatment" toward "moral and social rehabilitation", "within the limits of available resources". It creates a justifiable expectation only of treatment in the most general sense, and plaintiff does not allege complete denial of

an essential treatment. The broad language of the general policy statement cannot justify plaintiff's expectation that he would receive a specific type of treatment. *Cf. Lombardo v. Meachum*, 548 F.2d 13, 15 (1st Cir. 1977) (interpretation of statutes setting broad policy objectives for Massachusetts correctional system).

Second, plaintiff argues that a liberty interest in such transfers was created by a statute: P.R.Laws Ann. tit. 3, § 401m (1979 Supp.). He contends that the statute fosters the belief that all inmates meeting certain criteria will be transferred. While we are without the benefit of any interpretation by Puerto Rico courts, we think this statute does not create the asserted liberty interest. Section 401m speaks in discretionary, not mandatory terms. Section 401m(a) provides that the Secretary of Addiction Services may extend treatment to inmates within correctional facilities only "upon consent of the Correctional Administrator." With respect to the transfer of inmates to an outside facility, section 401m(c) establishes a "Transfer Committee" to determine whether an inmate qualifies for additional treatment and to make recommendations regarding transfer. Although the Committee's determination of the need for additional treatment is final, "[t]he administrator shall make the final decision in regard to the transfer of convicts". The section then provides that "The Administrator *may* transfer any convict who has fulfilled the above requirements...." § 401m(c)(3)(a) (emphasis added). Absent other, more mandatory provisions, such discretionary language fatally undermines the argument that the Commonwealth led plaintiff to a justifiable belief that he was entitled to receive a transfer. *See Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 101 S.Ct. 2460, 2465–2466, 69 L.Ed.2d 158 (1981); *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 11–12, 99 S.Ct. 2100, 2105–2106, 60 L.Ed.2d 668 (1979) (liberty

2. Article VI, section 19 of the Commonwealth Constitution provides in part:

"It shall be the public policy of the Commonwealth ... to regulate its penal institutions in a manner that *effectively achieves their* purposes and to provide, within the limits of available resources, for adequate treatment of delinquents in order to make possible their moral and social rehabilitation." P.R.Laws Ann. tit. 1, at 258.

interest recognized under a parole statute using the word "shall"); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (transfer made by prison officials under discretionary power does not infringe protected liberty interest).

We have found nothing to suggest limitations on the Administrator's discretion.[3] Section 401m(c)(2) sets forth a list of factors, but they purport to bind only the Transfer Committee, not the Administrator. Plaintiff has not argued that prison officials traditionally limit their discretion to those factors or that any established policy requires them to grant a transfer to every inmate who satisfies the listed requirements. *See Vitek v. Jones,* 445 U.S. 480, 489–90, 100 S.Ct. 1254, 1261–62, 63 L.Ed.2d 552 (1980); *Garcia v. DeBatista,* 642 F.2d 11, 14 (1st Cir. 1981). Such a proposition would be implausible, since the statute clearly does not require the Administrator to approve all transfers recommended by the Committee, nor does it speak of the Administrator "reviewing" the Committee's findings. It would appear that the Administrator is to make a discretionary judgment, on the basis of penological experience, about whether transfer is appropriate. Although the Administrator's decision may often be in favor of transfer, we do not believe that the statute gives inmates reason to believe that their desire for transfer has been crystallized into an entitlement. *Cf. Connecticut Board of Pardons v. Dumschat, supra,* (favorable action by Board of Pardons in 75 per cent of cases does not create a liberty interest).

Finally, plaintiff argues for a liberty interest in securing a transfer because its refusal inflicts a "grievous loss" on him. He contends that this loss follows not only directly, but also indirectly by reducing his chances for work release, other types of transfer, and parole. Assuming that the

"grievous loss" approach to identifying protectible liberty interests continues to have some vitality, *Garcia v. DeBatista, supra,* at n.8, we can identify no such loss. We do not doubt that release to a drug treatment facility brings opportunities and amenities that are not available to the general prison population. But this only demonstrates that the transfer may be desirable, not that someone who is denied transfer has been deprived of a liberty. "There is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty one desires." *Greenholtz v. Nebraska Penal Inmates, supra,* 442 U.S. at 9, 99 S.Ct. at 2105. Unlike an inmate who has been released on parole, *e.g., Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), or an inmate who has been granted release to a "halfway house", *Garcia v. DeBatista, supra,* plaintiff has never enjoyed any measure of conditional liberty.

We conclude that the district court was correct in holding that plaintiff had no protected right, expectation, or entitlement to be transferred from the general prison to a residential drug treatment center. The denial of plaintiff's application for transfer is therefore not subject to procedural scrutiny under the Fourteenth Amendment.

■ The district court also declined to consider plaintiff's allegation that while he was an inmate at the Rio Piedras Penitentiary he placed some personal photographic equipment in the office of the prison's Director of Sports, that this equipment disappeared, that defendants have failed to locate this equipment, and that this sequence of events constituted an illegal confiscation of property in violation of the Fifth and Fourteenth Amendments. The district court found this allegation to be a state law

---

**3.** On appeal, the government has produced certain "internal regulations" concerning procedures to be used and factors to be considered in deciding whether transfer to a residential drug treatment facility is appropriate. It is not at all clear who allegedly promulgated these regulations, or whether they are addressed to an individual prison's Classification and Treat-

ment Committee, to the Inter-Agency Transfer Committee, or to the Administrator of the Corrections Department. Moreover, the appellant challenges the accuracy of these documents and questions whether they have "lawfully issued for due enforcement". For purposes of this appeal, we accept appellant's challenges and decline to consider the documents.

claim whose consideration depended upon retention of the first claim. At the time the district court entered its order most appellate courts, with some disagreements, had held that a prison inmate who had alleged that his personal property had been stolen or lost while in custody did state a federal cause of action. *Compare Alexanian v. New York State Urban Development Corporation*, 554 F.2d 15 (2d Cir. 1977); *Carter v. Estelle*, 519 F.2d 1136 (5th Cir. 1975); *Russell v. Bodner*, 489 F.2d 280 (3d Cir. 1972), *with Bonner v. Coughlin*, 545 F.2d 565 (7th Cir. 1976) (en banc). Since that decision, however, the Supreme Court has held that where a prison inmate alleges a property loss due to official negligence, where he does not allege that the loss of his property occurred as the result of some established set procedure, and where the state offers other ways for the inmate to remedy his loss, there is no violation of due process. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). We read plaintiff's complaint as alleging no more than negligence on the part of individual prison officials. Puerto Rico authorizes damage actions to recover up to $15,000 for negligent acts by public officials within the scope of their duty. P.R.Laws Ann. title 32, § 3077(a). Such a damage action "could have fully compensated the respondent for the property loss he suffered". *Parratt v. Taylor, supra*, 451 U.S. at 544, 101 S.Ct. at 1917. Therefore, the complaint does not set forth a federal claim.

Finally, we see no merit in plaintiff's contention that the district court should have denied defendants' motion because there remained genuine issues of material fact. Plaintiff directs us to issues concerning the circumstances of his transfer request, the reasons why his request was denied, and the actual fate of his photographic equipment. None of these issues, however, is material to any cognizable federal claim, for the reasons we have set forth above.

*The judgment of the district court is affirmed.*