Nowaczyk, et al. v. Shaheen, et al.   CV-99-351-M   03/16/01

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Steven J. Nowaczyk, et al.,
     Plaintiffs

     v.                                    Civil No. 99-351-M
                                           Opinion No. 2001 DNH 052
Jeanne Shaheen, Governor of New Hampshire,
Henry Risley, Commissioner of Corrections,
Michael Cunningham, Warden of the
New Hampshire State Prison,
     Defendants

**O R D E R**

This civil rights action, brought by twenty-two inmates at the New Hampshire State Prison for Men in Concord (NHSP), challenges the prison's ban on the use and possession of tobacco and tobacco related products.  Defendants - the governor of New Hampshire, the commissioner of corrections, and the NHSP warden - move for summary judgment (document no. 26).  <u>See</u> Fed. R. Civ. P. 56.

**Standard of Review**

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c). When ruling upon a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party carries its burden, the burden shifts to the nonmoving party to demonstrate, with regard to each issue on which it has the burden of proof, that a trier of fact could reasonably find in its favor. See DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997).

At this stage, the nonmoving party "may not rest upon mere allegation or denials of [the movant's] pleading, but must set forth specific facts showing that there is a genuine issue" of material fact as to each issue upon which he or she would bear the ultimate burden of proof at trial. Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In this context,

2

"a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." International Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center, 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

## Factual and Procedural Background

The facts are presented in detail in the court's order dated January 18, 2001, and need not be repeated in full here. Briefly, however, the framework is as follows.

The NHSP instituted a policy in 1999 prohibiting the use of all tobacco products by staff and inmates at the prison (the tobacco-free policy). The policy was implemented over the course of several months, and has been in full effect since September 1, 1999. Implementation included provision of a smoking cessation program that included the presentation of a series of instructional videos related to smoking issues; the establishment of inmate facilitated support groups; a wellness exercise program; access to nicotine patches to assist in overcoming acquired nicotine habits; and the availability of carrots and

celery sticks to provide distraction for former smokers and tobacco users.  Throughout the transition or implementation process inmates and staff were invited to contribute suggestions and were regularly informed about the steps to be taken, the progress of the implementation program.

Plaintiffs challenge the tobacco-free policy on grounds that it violates their right to smoke as well as their Eighth Amendment right to be free from cruel and unusual punishment. They also allege that under New Hampshire law, and given the fact that tobacco was readily available in prisons for decades, they enjoy a state liberty interest in tobacco use that is vitiated by the tobacco-free policy.

In ruling on plaintiffs' earlier motion for more time to respond to defendants' motion for summary judgment, the court found that, because there is no federal constitutional right to use tobacco, the only federal issue that remains in this case is whether the tobacco-free policy, and its implementation, violated plaintiffs' Eighth Amendment rights.  <u>See</u> Order of Jan. 18, 2001.

## Discussion

The Eighth Amendment prohibition against cruel and unusual punishment is not limited to precluding barbaric, physical torture. See Laaman v. Helgemoe, 437 F. Supp. 269, 307 (D.N.H. 1977). The Eighth Amendment is also violated when prison officials, acting with deliberate indifference, deprive prisoners of basic human needs, such as food, water, safety, and medical care. See, e.g., Farmer v. Brennen, 511 U.S. 825, 832. "Deliberate indifference" entails both an objective and a subjective component. See, e.g., Wilson v. Seiter, 501 U.S. 294, 298 (1991). To satisfy the objective component, the deprivation must be sufficiently severe. See id. ("[O]nly those deprivations denying 'the minimal civilized measure of life's necessities[]' . . . are sufficiently grave to form the basis of an Eighth Amendment violation." (citation omitted)). The subjective component requires a showing that prison officials "know[] of and disregard[] an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." Id. at 838.

Here, plaintiffs allege that defendants acted with deliberate indifference to their medical and safety needs. In denying plaintiffs' motion for more time to respond to summary judgment, the court highlighted the record evidence suggesting that defendants likely did not disregard any known, excessive risks when they implemented the tobacco-free policy. See Order of Jan. 18, 2001 at 10-11. With regard to medical concerns, the warden's affidavit (attached to defendants' motion for summary judgment) demonstrates that, although he did not employ any discrete medical studies or directly consult with medical experts before implementing the tobacco-free policy, he did consult with prison officials in other states that had implemented similar policies. Cunningham Aff. ¶ 5. It was also noted that the NHSP's implementation program was very similar to, if not more comprehensive than, programs implementing smoking bans in other jurisdictions. See Reynolds v. Buck, 833 F. Supp. 518, 519, 520 (E.D. Pa. 1993) ("classes on how to overcome the craving to smoke" and snacks); Doughty v. Board of County Comm'rs, 731 F. Supp. 423, 427 (D. Colo. 1989) ("some counseling and medical assistance to inmates who request it, and . . . video-taped movies on quitting smoking available"). Furthermore, the

warden's affidavit explains that in addition to the implementation program, "all inmates have access to the Health Services Center, and have complete access to medical staff should medical treatment be required." Cunningham Aff. ¶ 7. Moreover, plaintiffs acknowledge that the warden distributed several memoranda in the months prior to full implementation of the tobacco-free policy, informing them in advance of the changes and inviting suggestions about how best to manage the transition.

Plaintiffs claim that they should have been given individual medical examinations to assess the potential impact of the tobacco-free policy, but do not raise a genuine dispute[1] as to the facts that the warden actively sought advice from those experienced in implementing similar policies and that, in addition to those provided by the specific implementation program, inmates had and have a full range of medical services readily available to them. Cf. Fiallo v. Batista, 666 F.2d 729, 731 (1st Cir. 1981) (finding inmates not entitled to treatment programs of choice). There is no evidence to suggest that any

---

[1] Plaintiffs' characterization of the warden's sworn affidavit as "hallow [sic] words" and "subjective statements" are mere allegations, not evidence sufficient to genuinely dispute the affidavit. See International Ass'n of Machinists and Aerospace Workers, 103 F.3d at 199-200.

official has interfered with any inmate's attempt to seek medical treatment for alleged nicotine withdrawal symptoms. Furthermore, plaintiff's allegations that the true intent behind the tobacco-free policy was punishment, and that the implementation programs were "just a ruse for the courts," amount to little more than unsupported and implausible claims — claims that certainly do not qualify as evidence sufficient to raise a genuine dispute as to material facts. This is also true with respect to plaintiffs' creative conspiracy theory — that they were "unwitting subjects" and defendants "subjected them to illegal experimentation without disclosing the defendants['] eventual goal of banning the addictive drug to monitor the reactions."

As for the safety issue, plaintiffs claim that the tobacco-free policy places them at excessive risk of injury because inmates experiencing withdrawal symptoms are more likely to be violent, and violent incidents have indeed occurred. But, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. Some prisoners tend to be violent people, for any number of reasons not related to living in a tobacco-free environment.

8

The evidence presented here, again, precludes finding that defendants disregarded a known excessive risk to plaintiffs' safety when they implemented the tobacco-free policy, because the officials with whom the warden consulted "indicated that there had been no increase in violence at their institutions attributable to implementing a tobacco-free policy," and nothing suggests NHSP officials thought otherwise. Cunningham Aff. ¶ 5. There would have been no reason for NHSP officials to think that inmates at NHSP would react any differently, and there is no credible basis to find that they have. More importantly, the pertinent question is not whether the warden should have expected violence to increase as a result of implementing a tobacco-free policy, but rather whether defendants knew the prison to be incapable of handling such unwarranted and unlawful violence, or allowed it to occur without interference. There is simply no evidence from which to draw either conclusion.

## Conclusion

The evidence belies any conclusion that defendants disregarded any known, excessive risk to plaintiffs when they implemented the tobacco-free policy at NHSP. Accordingly,

9

defendants' motion for summary judgment (document no. 26) is granted with respect to all federal claims.

As for plaintiffs' claim(s) that they enjoy a right to use tobacco while incarcerated under state statutory or common law, the court declines to exercise its supplemental jurisdiction over those potential state law causes of action. <u>See generally</u>, <u>Camelio v. American Federation</u>, 137 F.3d 666 (1st Cir. 1998). Accordingly, those state law claim(s) are dismissed without prejudice to refiling in state court.

The clerk shall enter judgment for defendants on the federal claims and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 16, 2001

cc:  Steven Nowaczyk
     Stephen Dugay
     James Towne
     John L. Watt
     Elmer Lee Baron
     Michael C. Herrick
     Steve Merchant
     Arthur Burley
     Carl Laurie
     Richard Pliskaner
     Albert Nadeau
     Jeff Eastman
     Charles Johnson
     Earnest Therrier
     James Poulicakos
     Patrick Morehouse
     Robert Phair, Jr.
     Keith Mountjoy
     Raven Dodge
     Walter Bourque
     Leon Cable
     Daniel J. Mullen, Esq.