**Richard R. BEGG, Plaintiff,**

v.

**G. Joe MOFFITT, Director of Public Safety of the City of Park Ridge, Herman Spahr, City Manager of the City of Park Ridge, Illinois, and the City of Park Ridge, Illinois, Defendants.**

**No. 82 C 2693.**

United States District Court, N.D. Illinois, E.D.

Feb. 7, 1983.

Stanley H. Jakala, Berwyn, Ill., for plaintiff.

Thomas H. Neuckranz, Jean C. Harris, Jacobs, Williams & Montgomery, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

Since its enactment as § 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1976) has played a critical role in protecting citizens against violations of their constitutional rights by persons acting under color of state law.[1] The Supreme Court has written that the original version of § 1983

---

1. The statute provides,

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

    42 U.S.C. § 1983 (Supp. IV 1980). Federal courts have jurisdiction over suits brought pursuant to § 1983 under 28 U.S.C. § 1331 (Supp. IV 1980).

was enacted for the express purpose of "enforc[ing] the Provisions of the Fourteenth Amendment." 17 Stat. 13. The predecessor of § 1983 was thus an important part of the basic alteration in our federal system wrought in the Reconstruction era through federal legislation and constitutional amendment. As a result of the new structure of law that emerged in the post-Civil War era—and especially of the Fourteenth Amendment, which was its centerpiece—the role of the Federal Government as a guarantor of basic federal rights against state power was clearly established. Section 1983 opened the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation.

*Mitchum v. Foster,* 407 U.S. 225, 238–39, 92 S.Ct. 2151, 2160, 32 L.Ed.2d 705 (1972) (footnotes and citations omitted).

However, § 1983 has come under criticism. In particular, it is blamed for creating a huge increase in the workload of the federal courts,[2] and the Supreme Court has recently expressed its determination to limit the scope of the statute, rejecting the argument that "any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983." *Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981). In

this case, defendants suggest that *Parratt* counsels against entertaining this action brought against officials of a municipal police department, claiming that they must "have some degree of freedom and autonomy in the administration, regulation and discipline of its employees," Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint at 19, which would be undermined by permitting plaintiff Richard Begg, an employee of the department, to challenge its disciplinary actions as violative of his constitutional rights. We must decide at what point the sweeping goals of § 1983 must be limited by the considerations expressed in *Parratt v. Taylor.*[3]

I

Plaintiff is a police officer employed by the City of Park Ridge, Illinois. At some point in 1981, plaintiff received an unsatisfactory performance rating and was suspended from his job for three days for his failure to issue enough traffic tickets to satisfy the police department's quota. Plaintiff brought suit in the Circuit Court of Cook County, Illinois challenging his suspension. On November 23, 1981 the circuit court entered an order reversing the three day suspension. After receiving relief from the circuit court, plaintiff spoke out publicly against the quota system. Thereafter, plaintiff alleges, he was subjected to various forms of discipline in retaliation for his public comments,[4] in violation of the first

---

**2.** The dramatic increase in the number of suits brought under § 1983 in the last twenty years is documented in Administrative Office of the United States Courts, 1980 Annual Report of the Director 61. However, there are reasons to doubt whether § 1983 imposes a "burden" on the federal judiciary commensurate with the volume of suits brought under it. In reality, it is likely that most truly "frivolous" § 1983 cases are disposed of easily, without great expenditure of resources, and that only those cases posing truly serious constitutional questions are time-consuming. One study shows that the burdens imposed on the federal district courts by § 1983 are modest. See Eisenberg, *Section 1983: Doctrinal Foundations and an Empirical Study,* 67 Cornell L.Rev. 482, 526–38 (1982).

**3.** Defendants rely on *Parratt* only in a general way, suggesting it limits § 1983 but not discussing its specific holding. See Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint at 18–20; Reply Memorandum in Support of Motion to Dismiss Plaintiff's Amended Complaint at 6–8. However, we think defendants' reliance on *Parratt* is specific enough to obligate us to examine the limits of *Parratt's* holding, especially in light of the importance of the issue defendants raise to the jurisdiction of the federal courts.

**4.** Plaintiff alleges that he has been required to complete a *daily activity sheet in which he* must account for every minute of his time on duty, unlike any other Park Ridge police officer, that he has been denied the opportunity to engage in part time off duty employment, that

amendment.[5] Plaintiff also alleges that he has been denied the opportunity to engage in part-time off duty employment and was denied pay increases, in violation of the fourteenth amendment.[6] In this lawsuit, he seeks damages and declaratory and injunctive relief. The city manager of Park Ridge and its director of public safety are named as defendants, as is the city itself.

We must first determine whether the amended complaint states a violation of the first and fourteenth amendments. If it does not, then we need not reach the question whether plaintiff may assert a claim under § 1983 in light of *Parratt.*

## II

Plaintiff claims that defendants' refusal to grant him a pay increase or the opportunity to engage in part-time employment violated the due process clause of the fourteenth amendment. The starting point for analysis of this claim is whether plaintiff's interest in his pay increase and part-time employment amounts to a "property" interest since, by its terms, the due process

he was denied holiday pay and that he has been denied longevity pay increases.

**5.** The first amendment provides, in pertinent part, "Congress shall make no law ... abridging freedom of speech ...." U.S. Const. amend. I. While the first amendment, by its terms, is a restriction only on the power of Congress, it has been held applicable to the States by operation of the due process clause of the fourteenth amendment. *See, e.g., Gitlow v. New York,* 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925).

**6.** The fourteenth amendment provides, in pertinent part, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

**7.** Plaintiff also contends that his interest amounts to constitutionally protected "liberty." This claim is problematic at best. Since the Court has held that even the loss of one's job does not amount to a deprivation of "liberty," as long as one remains free to obtain alternative employment, *see Paul v. Davis,* 424 U.S. 693, 709–10, 96 S.Ct. 1155, 1164–65, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth,* 408 U.S.

clause only applies to deprivations of "property."[7] *Jago v. Van Curen,* 454 U.S. 14, 17, 102 S.Ct. 31, 34, 70 L.Ed.2d 13 (1981) (per curiam); *Greenholtz v. Inmates,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979); *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 569–72, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1970).

The Supreme Court has written,

To have a property interest in a benefit, a person must clearly have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

. . . . .

Property rights, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlements to such benefits.

564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); it would seem to follow that the mere loss of supplemental income is not a loss of "liberty." Plaintiff's contention is foreclosed by *Webster v. Redmond,* 599 F.2d 793, 798 (7th Cir.1979), *cert. denied,* 444 U.S. 1039, 100 S.Ct. 712, 62 L.Ed.2d 674 (1980) where the plaintiff was denied a promotion and the court held that no "liberty" interest had been implicated, since, if the plaintiff were dissatisfied with his job, he remained free to seek another. The supplemental income plaintiff was denied here is indistinguishable from the promotion denied in *Webster.*

To support his "liberty" claim, plaintiff relies on *DiIulio v. Board of Fire and Police Commissioners,* 682 F.2d 666, 668–70 (7th Cir.) *cert. denied,* —— U.S. ——, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982), where the court held that the plaintiffs had a liberty interest in not being subjected to an arbitrary system of promoting personnel. As we read *DiIulio,* it involves substantive due process; plaintiffs' interest was in not being subjected to an arbitrary scheme—a substantive constitutional right. Here plaintiff does not allege that the scheme used by defendants was an arbitrary one; he attacks only the decisions made in his case, not the overall system. In such a situation, we think *Webster* and not *DiIulio* controls.

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).[8] The standard the Court has developed is one of "cause;" if the plaintiff can assert that he has a "legitimate claim of entitlement" not to lose a valuable governmental benefit except for cause, then the plaintiff has asserted a "property" interest.[9]

The Court has also explored how it is that a claim of entitlement not to lose a benefit except for cause can be considered "legitimate."

> "[P]roperty" interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, "property" denotes a broad range of interests that are secured by "existing rules or understandings." A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

*Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). Thus, a claim may amount to "property" whenever there are "mutually explicit

understandings," even if they are not in the form of technical rules of law.[10]

■ Applying these principles to the case at hand, and bearing in mind that defendants' motion to dismiss the complaint may not be granted unless it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief,[11] we conclude that plaintiff has adequately alleged a constitutionally protected property interest. The complaint alleges that the Park Ridge police department had a long-standing custom and practice of permitting police officers to seek outside employment.[12] The letter plaintiff received denying his request for off duty employment cited as a reason plaintiff's allegedly excessive use of sick leave, implying that the department would not have felt free to deny the request without a reason.[13] Plaintiff's entitlement to pay increases has an even firmer base. The contract between plaintiff's union and the city provides for pay increases based on length of service. It states, "Longevity will be paid according to the following schedule …." [14] The contract goes on to state,[15]

> Longevity pay shall be effective on the anniversary date of employment accord-

---

**8.** *See Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 161, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980); *Greenholtz v. Inmates,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979); *Leis v. Flynt,* 439 U.S. 438, 441–43, 99 S.Ct. 698, 700–01, 58 L.Ed.2d 717 (1979) (per curiam); *Bishop v. Wood,* 426 U.S. 341, 344 & nn. 6–7, 96 S.Ct. 2074, 2077 & nn. 6–7, 48 L.Ed.2d 684 (1976); *Arnett v. Kennedy,* 416 U.S. 134, 165–66, 94 S.Ct. 1633, 1649–50, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part and concurring in the result in part); *id.,* at 185, 94 S.Ct. at 1659 (White, J., concurring in part and dissenting in part); *id.* at 207–08, 94 S.Ct. at 1670 (Marshall, J., dissenting).

**9.** *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982); *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 9–12, 98 S.Ct. 1554, 1560–61, 56 L.Ed.2d 30 (1978); *Goss v. Lopez,* 419 U.S. 565, 573, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1974); *Arnett v. Kennedy,* 416 U.S. 134, 166–67, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part and concurring in the result in part); *id.* at 184–85, 94 S.Ct. at 1659 (White, J., concurring in part and dissenting in part); *id.* at 209–10, 94 S.Ct. at 1671 (Marshall, J., dissenting).

**10.** Thus, a plaintiff can have a constitutionally protected interest in employment even without formal contractual tenure, if a "de facto" contract, based on mutually explicit understandings, is present. *See Perry,* 408 U.S. at 599–603, 92 S.Ct. at 2698–2700; *Winkler v. County of DeKalb,* 648 F.2d 411 (5th Cir.1981); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 447–48 (2d Cir.1980); *Hennessey v. NCAA,* 564 F.2d 1136, 1145–56 (5th Cir. 1977); *Wehner v. Levi,* 562 F.2d 1276, 1278 (D.C.Cir.1977); *Hermes v. Hein,* 511 F.Supp. 123 (N.D.Ill.1980); *Daniel v. Porter,* 391 F.Supp. 1006, 1010–11 (W.D.N.C.1975); *Moore v. Kibbee,* 381 F.Supp. 834, 838 (E.D.N.Y.1974).

**11.** *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1955).

**12.** Amended Complaint ¶¶ 11–12.

**13.** *Id.* Ex. C.

**14.** *Id.* Ex. A article 6, § A at 2.4.

**15.** *Id.* at 2.5.

ing to the continuous length of service as specified, subject to satisfactory merit ratings. It should be pointed out that longevity pay is not necessarily to be considered automatic upon completion of the necessary years.

Defendants rely on the last quoted sentence, arguing that it means plaintiff had no legitimate expectation of a pay increase. However, the mandatory language of the contract, stating the increases "will be paid" and "shall be effective," argues against defendants' position. Moreover, the fact that the contract states that the increases are "subject to satisfactory merit ratings" implies that these ratings constitute "cause" for denying an increase. Defendants' construction of the last sentence also strikes us as odd in that we think it unlikely that plaintiff's union would have entered a contract containing a wholly illusory promise of longevity increases.[16] It is not clear beyond doubt that plaintiff will be unable to prove a mutually explicit understanding between his employer and himself that he would be able to obtain outside employment and longevity pay increases except for cause.[17] Accordingly, plaintiff has made out a claim that his interest in obtaining outside employment and longevity pay increases amounts to constitutionally protected "property."[18]

Once it is determined that plaintiff was deprived of a property interest, the analysis shifts to the question whether the deprivation was without due process of law. In order to answer this question, we must determine what process was due plaintiff. To decide what process is due, three factors must be weighed.

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the addition of substitute procedural safeguards would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).[19]

Here, the plaintiff was given no process at all prior to the loss of his scheduled longevity increase and denial of the opportunity for off duty employment. Plaintiff was not given any opportunity for hearing; he was simply informed of the loss of these benefits.[20] We must determine whether

**16.** Defendants make much of the fact that the contract establishes the police department's right to approve longevity increases and requests for off duty employment. All this demonstrates, however, is that the contract gives the department the right to remove these benefits for "cause." These contractual provisions do not imply that these benefits can be denied absent cause; indeed, to do so would be to construe the contract as an illusory promise, a construction we will not lightly adopt, especially at the pleading stage.

**17.** Defendants argue that plaintiff had no legitimate expectation of longevity increases or permission to seek outside employment since he had been "abusing" sick leave and knew such abuse would lead to sanctions. However, this goes to the question whether there was "cause" to deprive plaintiff of these benefits, not whether plaintiff could justifiably expect to receive them absent cause. If plaintiff could expect the benefits absent cause, then he had a property interest in them which could not be denied, even for cause, unless plaintiff was accorded due process.

**18.** The benefits plaintiff lost involved a reduction in the wages plaintiff would have received but for the deprivation. Wages, of course, are a specie of property. *See Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

**19.** *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 434, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982); *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 16–18, 98 S.Ct. 1554, 1564–65, 56 L.Ed.2d 30 (1978); *Dixon v. Love,* 431 U.S. 105, 112–13, 97 S.Ct. 1723, 1727–28, 52 L.Ed.2d 172 (1977); *Ingraham v. Wright,* 430 U.S. 651, 674–75, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977).

**20.** Defendants argue that the letter plaintiff received notifying him that he would not be eligible for off duty employment gave him notice and opportunity for hearing. This argument borders on the frivolous. The letter simply notified him that his request for off duty employment has been denied and stated the reasons therefor; it nowhere accorded him an opportunity to be heard on the question. In

plaintiff was constitutionally entitled to some predeprivation process.

■ The first *Eldridge* factor involves the plaintiff's interests. Here the interest asserted is in uninterrupted enjoyment of the disputed benefit pending a hearing.[21] Plaintiff was without the additional income generated by the longevity increase and off duty employment. While his job was not at stake, the cushion created by this additional income may have been critical. Plaintiff's interest in a predeprivation hearing is far from insubstantial.[22]

Provision of a hearing also would have had significant benefits in terms of reducing the risk of error. Plaintiff lost his "property" because of low merit ratings and alleged abuse of sick leave. These are largely subjective determinations, and with such determinations always comes a significant risk of error. Compared to this, the police department's interest in denying plaintiff any predeprivation process is insubstantial. Since plaintiff received no predeprivation process at all, he may prevail if,

and we assume that, the Constitution requires no more than the most informal of hearings: notice by letter of the charges against him and an opportunity to respond by letter. Such a "hearing" would require minimal effort by defendants: they did in fact send a letter, to which they need have added only one sentence, advising plaintiff of the opportunity to respond. Then, defendants need only have taken the few minutes necessary to review plaintiff's response. Defendants' interest in dispensing with such minimal procedures is, at least on the current record, slight.

In sum, defendants have advanced no justification for denying plaintiff any predeprivation process at all. Yet the Constitution requires a compelling justification before predeprivation process is dispensed with. Absent a necessity for quick action or the impracticability of providing any predeprivation process at all, the Constitution requires pre-deprivation notice and opportunity for hearing.[23] This principle is uni-

---

*Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), the plaintiffs received a letter notifying them that unless they paid their utility bills by a certain date, their service would be discontinued. The Court held that the letter did not provide them with due process.

Petitioners' notification procedures, while adequate to apprise the Crafts of the threat of termination of service, was not "reasonably calculated" to inform them of the availability of "an opportunity to present their objections" to their bills. The purpose of notice under the due process clause is to apprise the affected individual of, and permit adequate preparation for, an impending "hearing." Notice in a case of this kind does not comport with constitutional requirements when it does not advise the customer of the availability of a procedure for protesting a proposed termination of utility service as unjustified.

*Id.* at 14–15, 98 S.Ct. at 1562–63. On the bare record now before us, which contains nothing more than the letter, we conclude plaintiff did not receive an opportunity for a predeprivation hearing.

**21.** *See Mathews v. Eldridge,* 424 U.S. 319, 340, 96 S.Ct. 893, 905, 47 L.Ed.2d 18 (1976); *Arnett v. Kennedy,* 416 U.S. 134, 169, 94 S.Ct. 1633, 1651, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part and concurring in the result in part); *id.* at 190, 94 S.Ct. at 1662 (White, J., concurring in part and dissenting in part); *id.*

at 218–23, 94 S.Ct. at 1675–78 (Marshall, J., dissenting).

**22.** Plaintiff's interest in obtaining off duty employment pending a hearing is all the stronger in that this deprivation may truly be final rather than on an interim basis. It is doubtful if opportunities for off duty employment that are lost pending a hearing can ever be regained. In any event, it is clear that even a temporary loss of incremental wages implicates an interest of substantial importance. *See Sniadach v. Family Finance Corp.,* 395 U.S. 337, 340–42, 89 S.Ct. 1820, 1822–23, 23 L.Ed.2d 349. *See also Fuentes v. Shevin,* 407 U.S. 67, 88–90, 92 S.Ct. 1983, 1998–99, 32 L.Ed.2d 556 (1972).

**23.** *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982); *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.,* 452 U.S. 264, 299–300, 101 S.Ct. 2352, 2372, 69 L.Ed.2d 1 (1981); *Parratt v. Taylor,* 451 U.S. 527, 538–40, 101 S.Ct. 1908, 1914–15, 68 L.Ed.2d 420 (1981); *Fuentes v. Shevin,* 407 U.S. 67, 81–82, 92 S.Ct. 1983, 1994–95, 32 L.Ed.2d 556 (1972); *Boddie v. Connecticut,* 401 U.S. 371, 378–79, 91 S.Ct. 780, 786, 28 L.Ed.2d 13 (1971). *See also Sniadach v. Family Finance Corp.,* 395 U.S. 337, 339, 89 S.Ct. 1820, 1821, 23 L.Ed.2d 349 (1969). *Cf. Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (debtor need not receive notice prior to sequestration of

formly adhered to in the cases.[24] Even where a formal predeprivation evidentiary hearing is not required, the Court has always required, at a minimum, that the person affected by governmental action be given some sort of informal opportunity to present his or her side of the story.[25]

The rationale for this principle is clear.

The requirement of notice and an opportunity to be heard raises no impenetrable barrier to the taking of a person's possessions. But the fair process of decision making it guarantees works, by itself, to protect against arbitrary deprivation of property. For when a person has the opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented. It has long been recognized that "fairness can rarely be obtained through a one-sided determination of facts decisive of rights ... [And n]o better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it."

If the right to notice and a hearing is to serve its full purpose, then, it must be granted at a time when the deprivation can be prevented. At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place. Damages can even be awarded to him for the wrongful deprivation. But no later hearing can undo the fact that an arbitrary taking that was subject to the right of procedural due process has already occurred. "This Court has not ... embraced the general proposition that a wrong may be done if it can be undone."

*Fuentes v. Shevin,* 407 U.S. 67, 81–82, 92 S.Ct. 1983, 1994–95, 32 L.Ed.2d 556 (1972) (citations omitted) (quoting *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 170–72, 71 S.Ct. 624, 647–49, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring) and *Stanley v. Illinois,* 405 U.S. 645, 647, 92 S.Ct. 1208, 1210, 31 L.Ed.2d 551 (1972)).[26]

Here, there is no showing of a necessity for quick action or the impracticability of providing any predeprivation process. Defendants did send a letter, which easily could have, but did not, invite a response prior to their deprivation of plaintiff's property. We have found no case which permits a state employer to provide no predeprivation process at all when depriving an employee of a valuable benefit.[27] By provid-

---

property in light of risk debtor will conceal or sell property once given notice, provided a reliable procedure for obtaining ex parte sequestration orders is used). For examples of the exception to the general rule due to need for quick action or impracticality, *see, e.g. Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (seizure of harmful drugs); *Fahey v. Mallonnee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947) (seizure of bank's assets due to doubts about its management); *North American Cold Storage Co. v. Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (seizure of tainted food from warehouse).

**24.** *See Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 16–19, 98 S.Ct. 1554, 1564–65, 56 L.Ed.2d 30 (1978); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1974); *Arnett v. Kennedy,* 416 U.S. 134, 170, 94 S.Ct. 1633, 1652, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part and concurring in the result in part); *id.* at

186–96, 94 S.Ct. at 1660–65 (White, J., concurring in part and dissenting in part).

**25.** In fact, the Court has suggested that while the degree of formality required in a predeprivation hearing is subject to a balancing test of the sort described in *Eldridge,* the requirement that some sort of predeprivation hearing, however informal, be had is absolute, and not subject to balancing. *See Board of Regents v. Roth,* 408 U.S. 564, 570 n. 8, 92 S.Ct. 270, 2705 n. 8, 33 L.Ed.2d 548 (1972).

**26.** The Court continues to treat *Fuentes* as good law. *See Lugar v. Edmondson Oil Co.,* —— U.S. ——, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *North Ga. Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).

**27.** *See, e.g., Gaffney v. Silk,* 488 F.2d 1248 (5th Cir.1973) (termination of disability benefits); *Atwater v. Roudebush,* 452 F.Supp. 622 (N.D. Ill.1976) (deduction from employee's wages to

ing no predeprivation process whatsoever, defendants failed to adhere to the commands of the fourteenth amendment. The complaint states a claim under the due process clause.

## III

It has long been clear that the due process clause of the fourteenth amendment prohibits the state from denying a person a valuable governmental benefit in retaliation for that person's exercise of his first amendment right of free speech. This is the case even where the plaintiff has no legitimate claim of entitlement to the benefit.

For at least a quarter-century, this Court has made it clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would be penalized and inhibited. This could allow the government to "produce a result which [it] could not command directly." Such interference with constitutional rights is impermissible.

*Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972) (quoting *Speiser v. Randall,* 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958)).[28]

The parties agree that plaintiff could not have been disciplined consistently with due process if the discipline was in retaliation for the exercise of his first amendment rights. Defendants concede for present purposes that plaintiff was disciplined as a result of his comments about defendants' ticket quota system. However, defendants argue that plaintiff's comments were unprotected by the first amendment.

The parties agree that the test for whether plaintiff's comments were protected by the first amendment is whether they were likely to substantially interfere with the proper performance of his duties.[29] Defendants contend that plaintiff's criticisms of the department would have eroded its morale and discipline. However, defendants have not supported their assertions with affidavits or other evidentiary materials. We doubt our ability to resolve this question on the current record. However, we need not go even so far as to hold that defendants have not adequately documented their claim, since we find that the complaint alleges affirmative and thus far uncontested facts which demonstrate that plaintiff's comments were protected by the first amendment.

satisfy debt owed government); *Plato v. Roudebush,* 397 F.Supp. 1295, 1307–10 (D.Md.1975) (termination of pension benefits); *Daniel v. Porter,* 391 F.Supp. 1006 (W.D.N.C.1975) (demotion of police officer). Cf. *Hermes v. Hein,* 511 F.Supp. 123 (N.D.Ill.1980) (allegation that defendants failed to promote plaintiff without a hearing states a claim). There is dicta in *Ramirez de Arellano v. Alvarez de Choudens,* 575 F.2d 315, 320–21 (1st Cir.1978) suggesting that where an adverse employment action results in no immediate loss of salary or benefits, no predeprivation process is required. That was not the case here, however. In *Sutton v. City of Milwaukee,* 672 F.2d 644 (7th Cir.1982), the court held no notice and hearing were required before towing of illegally parked cars. The court noted that advance notice would enable owners to move the cars before towing, thus defeating the deterrent purpose of the towing

ordinance, and that the costs of notice and hearing were so high the city would have to abandon towing altogether. Thus, *Sutton* appears to be a case where predeprivation notice and hearing is simply impractical. See note 23, supra.

28. See *Branti v. Finkel,* 445 U.S. 507, 514–16, 100 S.Ct. 1287, 1292–93, 63 L.Ed.2d 574 (1980); *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 283–84, 97 S.Ct. 568, 574–75, 50 L.Ed.2d 471 (1977); *Elrod v. Burns,* 427 U.S. 347, 355–60, 96 S.Ct. 2673, 2680–83, 49 L.Ed.2d 547 (1976) (plurality opinion); id. at 375, 96 S.Ct. at 2690 (Stewart, J., concurring in the judgment).

29. See *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

■ The complaint alleges that plaintiff's comments only came after he had prevailed in circuit court, and that they related to the court's ruling. The first amendment protects plaintiff's right to seek judicial redress of his grievances. *See Bates v. State Bar,* 433 U.S. 350, 376 n. 32, 97 S.Ct. 2691, 2705 n. 32, 53 L.Ed.2d 810 (1977).[30] It also protects accurate public comment about proceedings in open court, absent a compelling state interest in prohibiting such comment.[31] Here, there is no contention that plaintiff's comments were in any way inaccurate. The only interest put forward in justification of defendants' actions is their interest in ensuring the department could properly perform its duties. However, the only comments of plaintiff at issue relate to the traffic ticket quota, and the circuit court had just held the quota invalid. Under the circumstances, the department can hardly assert a compelling interest in preventing officers from speaking out against the quota in order to ensure the department functions smoothly; the court had stated that the quota was not proper and the department's interest in enforcing it was not legitimate as long as the court's judgment stood (the judgment was reversed on appeal). Defendants have not made out a substantial interest in preventing plaintiff from commenting on the quota; his comments were protected by the first amendment and could not constitutionally be the basis for discipline. Plaintiff has stated a claim under the first and fourteenth amendments.[32]

## IV

Having concluded that plaintiff's complaint properly states a claim for deprivation of federal rights, the question becomes whether that deprivation is actionable under § 1983. Thus, we turn to defendants' argument that this suit is barred by the principles enunciated in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

Taylor was an inmate at the Nebraska Penal and Correctional Complex. He mail ordered a hobby kit valued at $23.50, paying for it with funds in his prison account. The kit was received by the prison, but lost at some point before it could be given to Taylor. Taylor filed suit under § 1983, contending that he had been negligently deprived of property without due process of law. The Supreme Court reversed the judgment in favor of Taylor.

The Court began its analysis by noting that nothing in § 1983's text or its judicial

**30.** *See also Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 455–59, 98 S.Ct. 1912, 1918–20, 56 L.Ed.2d 444 (1978). *See generally In re Primus,* 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978); *United Mine Workers v. Illinois State Bar Ass'n,* 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967); *Brotherhood of Railroad Trainmen v. Virginia ex rel. Virginia State Bar,* 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964); *NAACP v. Button,* 371 U.S. 415, 434–44, 83 S.Ct. 328, 338–43, 9 L.Ed.2d 405 (1963).

**31.** *See National Polymer Products, Inc. v. Borg-Warner Corp.,* 641 F.2d 418 (6th Cir.1981); *Hirschkop v. Snead,* 594 F.2d 356 (4th Cir.1979) (per curiam); *Chicago Council of Lawyers v. Bauer,* 522 F.2d 242 (7th Cir.1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976); *CBS, Inc. v. Young,* 522 F.2d 234 (2d Cir.1975); *In re Oliver,* 452 F.2d 111, 114–15 (7th Cir.1971); *Chase v. Robson,* 435 F.2d 1059 (7th Cir.1970); *Shadid v. Jackson,* 521 F.Supp. 85 (E.D.Tex.1981); *Ruggieri v. Johns-Manville Products Corp.,* 503 F.Supp. 1036 (D.R.I.1980); *Polk v. Texas,* 374 F.Supp. 784 (N.D.Tex.1974). *But see United States v. Tijerina,* 412 F.2d 661, 667 (10th Cir.), *cert. denied,* 396 U.S. 990, 90

S.Ct. 478, 24 L.Ed.2d 452 (1969). *See generally Oklahoma Pub. Co. v. District Court,* 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977) (per curiam); *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559–62, 96 S.Ct. 2791, 2802–04, 49 L.Ed.2d 683 (1976); *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 492–97, 95 S.Ct. 1029, 1044–47, 43 L.Ed.2d 328 (1975).

**32.** Plaintiff also forwards a claim under the equal protection clause of the fourteenth amendment, based on defendants' allegedly discriminatory discipline of him. However, a mere inconsistency in the way the state treats persons is not the basis for an equal protection claim unless it is caused by the defendants' purposeful and intentional discrimination. *Shango v. Jurich,* 681 F.2d 1091, 1103–04 (7th Cir.1982). The only purpose or intent alleged in the complaint is an intent to retaliate against plaintiff for his comments on the quota system. Thus, we think plaintiff's equal protection claim is analytically indistinguishable from his first amendment claim.

construction precluded a claim based on negligence, holding that

> § 1983 affords a "civil remedy" for deprivations of federally protected rights caused by persons acting under color of state law without any express requirement of a particular state of mind. Accordingly, in any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

451 U.S. at 535, 101 S.Ct. at 1912.[33]

Taylor's claim was that he was deprived of property without due process. The Court noted that Taylor's case satisfied the first three elements of a § 1983 due process claim: the prison officials acted under color of state law in receiving and losing the kit, the kit was "property," [34] and the alleged loss, although negligent, amounted to a deprivation.[35] *See* 451 U.S. at 536–37, 101 S.Ct.

at 1913. However, Taylor's claim foundered on the fourth requirement—the deprivation was not "without due process of law."

The Court wrote that in most cases where it had held that due process required a predeprivation hearing, "the deprivation of property was pursuant to some established procedure and 'process' could be offered before any actual deprivation took place." 451 U.S. at 537, 101 S.Ct. at 1913. However, under certain circumstances, the Court had recognized that a post-deprivation hearing could provide due process.

> [We] recognize that either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process can, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, satisfy the requirements of procedural due process.

*Id.* at 539, 101 S.Ct. at 1914 (footnote omitted).[36]

---

**33.** Thus, whatever other uncertainties *Parratt* may have created, it seems to have firmly held that § 1983 requires no particular state of mind; even negligence can be actionable. *See Fernandez v. Chardon,* 681 F.2d 42, 55 (1st Cir.1982), *cert. granted sub nom. Chardon v. Soto,* —— U.S. ——, 103 S.Ct. 339, 74 L.Ed.2d 382 (1982), and *cert. denied,* —— U.S. ——, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982); *Hirst v. Gertzen,* 676 F.2d 1252, 1262–63 (9th Cir.1982); *Bronze Shields, Inc. v. New Jersey Dep't of Civ. Serv.,* 667 F.2d 1074, 1097 (3d Cir.1981) (Higginbotham, J., dissenting and concurring); *Mills v. Smith,* 656 F.2d 337, 340 n. 2 (8th Cir.1981); *Albers v. Whitley,* 546 F.Supp. 726, 732 (D.Ore.1982); *Haugabrook v. City of Chicago,* 545 F.Supp. 276, 277–78 (N.D.Ill.1982); *Means v. City of Chicago,* 535 F.Supp. 455, 461–62 (N.D.Ill.1982); *Walker v. Rowe,* 535 F.Supp. 55 (N.D.Ill.1982); *Visser v. Magnarelli,* 530 F.Supp. 1165, 1173 (N.D.N.Y.1982); *Watson v. McGee,* 527 F.Supp. 234, 237–38 (S.D. Ohio 1981); *Peery v. Davis,* 524 F.Supp. 107 (E.D.Va.1981); Friedman, *Parratt v. Taylor: Opening and Closing the Door on Section 1983,* 9 Hastings Const. L.Q. 545, 569–70 (1982); Casenote, *Defining the Parameters of Section 1983: Parratt v. Taylor,* 23 B.C.L.Rev. 1219, 1232–35 (1982). *But see Garnett v. Kepner,* 541 F.Supp. 241 (M.D.Pa.1981). *But cf. Hays v. Jefferson County,* 668 F.2d 869 (6th Cir.1982)

(allegation of unconstitutional municipal policy requires more than negligence); *Starstead v. City of Superior,* 533 F.Supp. 1365 (W.D.Wis. 1982) (same); *Spriggs v. City of Chicago,* 523 F.Supp. 138, 139–45 (N.D.Ill.1981) (same). Some confusion is created since, while § 1983 may contain no state of mind requirement, the constitutional right plaintiff asserts under it may have an intent requirement. A discussion of state of mind in the wake of *Parratt* is found in Nahmod, *Constitutional Accountability in Section 1983 Litigation,* 68 Iowa L.Rev. 1 (1982).

**34.** Thus the Court implicitly rejected some sort of de minimus limitation on the definition of "property."

**35.** The Court declined to hold that a "deprivation" could only be intentional. For this reason, Justice Powell refused to join its opinion. *See* 451 U.S. at 548–49, 101 S.Ct. at 1919–20 (Powell, J., concurring in the result). Similarly, it held that a state actor's mere negligence could still constitute conduct under color of state law. *See id.* at 536–37, 541, 101 S.Ct. at 1913, 1915.

**36.** This analysis is consistent with that generally employed in the cases. *See* Part II, *supra.*

The Court concluded that Taylor's claim fell into this category of cases where due process required only a post-deprivation remedy. Since the deprivation was not the result "of some established state procedure," but rather "occurred as a result of unauthorized failure of agents of the State to follow established state procedure," 451 U.S. at 543, it would not have been possible for the state to have given Taylor a predeprivation hearing. Instead, the state offered Taylor a postdeprivation hearing in the form of the right to bring a tort action for the wrongful deprivation of his property in the Nebraska state courts. *Id.* at 543–44, 101 S.Ct. at 1916–17. This postdeprivation hearing was sufficient to provide Taylor due process of law.[37]

Justice Blackmun wrote a concurring opinion stating that he did not read the majority's opinion as applicable to the deprivation of life or liberty, or to governmental actions that are substantively, rather than procedurally, unconstitutional. "[T]here are certain governmental actions that, even if undertaken with a full panoply of procedural protection, are, in and of themselves, antithetical to fundamental notions of due process." 451 U.S. at 545, 101 S.Ct. at 1917. He also stated that a state postdeprivation remedy should not be considered to satisfy due process when it would have been possible for the state to have provided a predeprivation hearing. *Id.* at 546, 1918.[38]

The implications of *Parratt* were explored by the Court in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). Logan had charged his employer with unlawful discrimination under Illinois state law. The Illinois Fair Employment Practices Commission negligently failed to convene a factfinding conference on the charge within 120 days as required by state law. The Illinois Supreme Court held that this deprived the commission of jurisdiction over Logan's charge, and ordered it dismissed.

The Supreme Court reversed. It held that Logan's state law cause of action against his employer was "property" within the meaning of the due process clause, and that he had been deprived of it. *See* 455 U.S. at 428–33, 102 S.Ct. at 1153–56. The Court then held that the deprivation was without due process of law since Logan never got a hearing on the merits of his claim. Rather, he was deprived of his claim "in a random manner," *Id.* at 433–35, 102 S.Ct. at 1156–57, and that this deprivation was unconstitutional whether or not it was malicious or merely negligent, *id.* at 435–36, 102 S.Ct. at 1157–58.

The company argued, however, that Logan could receive due process in the form of a tort action against the commission for negligently depriving him of his property. The Court replied,

**37.** Under state law, Taylor would not have been able to obtain punitive damages or a jury trial in his suit against the prison officials, unlike in a § 1983 action. However, the Court held these facts did not mean his postdeprivation remedy was inadequate, since he nevertheless could have been "fully compensated for the property loss he suffered" and therefore his remedy satisfied the requirements of due process. *Id.* at 544, 101 S.Ct. at 1917.

**38.** Justice White indicated that he agreed with Justice Blackmun's concurrence. *Id.* 451 U.S. at 545, 101 S.Ct. at 1917 (White, J., concurring). Justice Stewart wrote that he doubted that Nebraska had "deprived" Taylor of anything since it was merely negligent, but joined the majority's opinion. *Id.* at 544–45, 101 S.Ct. at 1917 (Stewart, J., concurring). Justice Powell stated his view that no deprivation could occur where only negligence is alleged, and

Justice Marshall dissented. Thus, only Justices Brennan and Stevens and Chief Justice Burger joined Justice Rehnquist's majority opinion without reservation.

*Parratt* is not without its antecedents. *See Ingraham v. Wright,* 430 U.S. 651, 674–82, 97 S.Ct. 1401, 1414–18, 51 L.Ed.2d 711 (1977) (state postdeprivation tort remedies provide due process for student allegedly subjected to excessive corporal punishment); *Paul v. Davis,* 424 U.S. 693, 697–99, 96 S.Ct. 1155, 1158–59, 47 L.Ed.2d 405 (1976) (§ 1983 was not intended to supplant state law tort remedies). *See also City of Columbus v. Leonard,* 443 U.S. 905, 910–11, 99 S.Ct. 3097, 3100–01, 61 L.Ed.2d 872 (1979) (Rehnquist, J., dissenting from denial of certiorari) (suggesting the Court should consider whether § 1983 should be available where there are state postdeprivation legal remedies).

This argument misses *Parratt*'s point. In *Parratt*, the Court emphasized that it was dealing with "a tortious loss of . . . property as a result of a random and unauthorized act by a state employee . . . not a result of some established state procedure." 451 U.S. at 541 [101 S.Ct. at 1915]. Here, in contrast, it is the state system itself that destroys a complainant's property interest, by operation of law, whenever the Commission fails to convene a timely conference—whether the Commission's action is taken through negligence, maliciousness, or otherwise. *Parratt* was not designed to reach such a situation. See *id.*, at 545 [101 S.Ct. at 1917] [(Blackmun, J., concurring)]. Unlike the complainant in *Parratt*, Logan is challenging not the Commission's error, but the "established state procedure" that destroys his entitlement without according him proper procedural safeguards. 455 U.S. at 435–36, 102 S.Ct. at 1158.

*Parratt* suggests that if plaintiff has post-deprivation state remedies available, due process may be satisfied. In the case at bar, plaintiff presumably could seek redress against defendants in a state court action brought under the common law of Illinois.[39] Therefore, *Parratt* raises the question of whether plaintiff has truly been denied due process of law given that he can seek to be made whole in the courts of Illinois. This potential implication of *Parratt* has generated great controversy among both courts[40] and commentators.[41] In particular, some

---

**39.** Presumably, if plaintiff were denied benefits in violation of an express or implied contract, or for an impermissible reason that undermines public policy, he could seek relief under Illinois' common law of contract.

**40.** See *Coleman v. Faulkner*, 697 F.2d 1347 (10th Cir.1982) (per curiam); *Brewer v. Blackwell*, 692 F.2d 387, 394–95 (5th Cir.1982); *Evans v. City of Chicago*, 689 F.2d 1286, 1297–99 (7th Cir.1982); *Flower Cab Co. v. Petitte*, 685 F.2d 192 (7th Cir.1982) (on motion to stay injunction), *injunction vacated and case remanded mem.*, 692 F.2d 760 (7th Cir.1982); *Loftin v. Thomas*, 681 F.2d 364 (5th Cir.1982); *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 832 n. 9 (1st Cir.), *cert. denied*, —— U.S. ——, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982); *Weiss v. Lehman*, 676 F.2d 1320 (9th Cir.1982); *Fiallo v. de Batista*, 666 F.2d 729, 733 (1st Cir.1981); *Steffen v. Housewright*, 665 F.2d 245 (8th Cir. 1981) (per curiam); *Wakinekona v. Olim*, 664 F.2d 708, 715 (9th Cir.1981), *cert. granted*, —— U.S. ——, 102 S.Ct. 2294, 73 L.Ed.2d 1299 (1982); *Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345, 1352 (9th Cir.1981), *cert. granted sub nom. Kush v. Rutledge*, —— U.S. ——, 102 S.Ct. 3508, 73 L.Ed.2d 1382 (1982); *Wright v. Dallas Cnty. Police Dep't*, 660 F.2d 623, 626 (5th Cir.1981); *Duncan v. Poythress*, 657 F.2d 691, 704–05 (5th Cir.1981), *cert. dismissed*, —— U.S. ——, 103 S.Ct. 368, 74 L.Ed.2d 504 (1982); *Richardson v. Fleming*, 651 F.2d 366, 372 n. 10 (5th Cir.1981); *Koch v. Schneider*, 550 F.Supp. 846 (N.D.Ill.1982); *Juncker v. Tinney*, 549 F.Supp. 574 (D.Md.1982); *Romeu v. Housing Investment Corp.*, 548 F.Supp. 1312, 1326–27 (D.P.R.1982); *Moore v. Gluckstern*, 548 F.Supp. 165 (D.Md.1982); *Liotta v. Rent Guidelines Board*, 547 F.Supp. 800 (S.D.N.Y. 1982); *Abraham v. County of Washoe*, 547 F.Supp. 548 (D.Nev.1982); *Dutton v. City of Crest Hill*, 547 F.Supp. 38 (N.D.Ill.1982);

*Holmes v. Wampler*, 546 F.Supp. 500 (E.D.Va. 1982); *Al-Mustafa Irshad v. Spann*, 543 F.Supp. 922 (E.D.Va.1982); *Holman v. Hilton*, 542 F.Supp. 913 (D.N.J.1982); *Frazier v. Collins*, 538 F.Supp. 603 (E.D.Va.1982); *Pantoja v. City of Gonzales*, 538 F.Supp. 335 (N.D.Cal. 1982); *Howse v. DeBerry Correctional Institute*, 537 F.Supp. 1177 (M.D.Tenn.1982); *Peters v. Township of Hopewell*, 534 F.Supp. 1324, 1333–34 (D.N.J.1982); *Toins v. Ignash*, 534 F.Supp. 452 (E.D.Mich.1982); *McCowen v. City of Evanston*, 534 F.Supp. 243 (N.D.Ill.1982); *Whorley v. Karr*, 534 F.Supp. 88 (W.D.Va. 1981); *Waterstraat v. Central State Hosp.*, 533 F.Supp. 274 (W.D.Va.1982); *Tarkowski v. Hoogasian*, 532 F.Supp. 791 (N.D.Ill.1982); *Ragusa v. Streator Police Dep't*, 530 F.Supp. 814 (N.D. Ill.1981); *Graham v. Mitchell*, 529 F.Supp. 622 (E.D.Va.1982); *Isaac v. Jones*, 529 F.Supp. 175, 180–81 (N.D.Ill.1981); *Slade v. Petrovsky*, 528 F.Supp. 99 (M.D.Pa.1981); *Haygood v. Younger*, 527 F.Supp. 808, 813–15 (E.D.Cal.1981); *Cline v. United States Dep't of Justice*, 525 F.Supp. 825 (D.S.D.1981); *Hendrix v. Faulkner*, 525 F.Supp. 435, 452–53 (N.D.Ind.1981); *Eberle v. Baumfalk*, 524 F.Supp. 515 (N.D.Ill.1981); *Spriggs v. City of Chicago*, 523 F.Supp. 138, 143 n. 5 (N.D.Ill.1981); *Parker v. Rockefeller*, 521 F.Supp. 1013 (N.D.W.Va.1981); *Meshkov v. Abington Township*, 517 F.Supp. 1280 (E.D. Va.1981); *Sheppard v. Moore*, 514 F.Supp. 1372 (M.D.N.C.1981).

**41.** See Eisenberg, *supra* note 2, at 512–15; Friedman, *supra* note 33; Kirby, *Demoting 14th Amendment Claims to State Torts*, 68 A.B. A.J. 166 (1982); Kupfer, *Restructuring the Monroe Doctrine: Current Litigation Under Section 1983*, 9 Hastings Const.L.Q. 463, 469–75 (1982); Nahmod, *supra* note 33; Terrell, *"Property," "Due Process," and the Distinction*

courts and commentators have concluded, based on *Logan* and *Parratt,* that where a state postdeprivation remedy exists, § 1983 is no longer available unless the plaintiff challenges an "established state procedure" rather than a "random and unauthorized act."[42] If that is the case, then *Parratt* and *Logan* preclude the instant suit, since the challenge made here does not involve an established state procedure, but rather a single act that, if wrongful, can presumably be redressed in the courts of Illinois. It is to this question that we now turn.

## V

The starting point for any analysis of the availability of § 1983 relief where a state postdeprivation remedy exists must be *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled in part on other grounds, Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In that case, the complaint alleged that 13 Chicago police officers broke into the plaintiffs' home in the early morning, ransacked it, arrested Monroe and detained him at a stationhouse on "open" charges for ten hours before releasing him. All this was done without an arrest or search warrant, allegedly in violation of the fourth amendment's prohibition on unreasonable search and seizure.

The Court held that any deprivation of a right secured by the fourteenth amendment is actionable under § 1983. 365 U.S. at 171, 81 S.Ct. at 475–76. Since fourth amendment rights are secured against the states by operation of the fourteenth amendment, the Court held that the rights plaintiffs asserted were cognizable under § 1983. *Id.* The Court went on to observe that § 1983 was originally enacted because Congress believed the states were unwilling or unable to protect rights secured by the fourteenth amendment, so that a federal remedy was needed. *Id.* at 174–80, 81 S.Ct. at 477–80. This led the Court to conclude that the act permitted plaintiffs to proceed in federal court even if a state remedy was available.

Although the legislation was enacted because of the conditions that existed in the South at that time, it is cast in general language and is as applicable to Illinois as it is to the States whose names were mentioned over and again in the debates. *It is no answer that the State has a law which if enforced would give relief.* The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked. Hence the fact that Illinois by its constitution and laws outlaws unreasonable searches and seizures is no barrier to the present suit in federal court.

---

Between Definition and Theory in Legal Analysis, 70 Geo.L.J. 861, 923–27 (1982); Casenote, supra note 33; Article, Taylor v. Parratt: Negligent Deprivation of Property and Section 1983, 15 Creighton L.Rev. 868 (1982); Note, The Supreme Court, 1981 Term, 96 Harv.L.Rev. 62, 100–05 (1982) [hereinafter cited as The Supreme Court, 1981 Term]; Case Comment, Constitutional Law—Civil Rights—Negligent Injury by the State Is Not Cognizable Under 42 U.S.C. Section 1983 When the State Provides Adequate Tort Claim Procedure, 56 Tul.L.Rev. 1441 (1982); Comment, Federalism, Section 1983 and State Law Remedies: Curtailing the Federal Civil Rights Docket by Restricting the Underlying Right, 43 U.Pitt.L.Rev. 1035 (1982). See also Note, Preclusion of Section 1983 Causes of Action by Comprehensive Statutory Remedial Schemes, 82 Colum.L.Rev. 1183 (1982); Case Comment, Civil Rights: The Supreme Court Finds New Ways to Limit Section 1983, 33 U.Fla.L.Rev. 776 (1981).

42. See Flower Cab Co. v. Petitte, 685 F.2d 192 (7th Cir.1982) (on motion to stay injunction), injunction vacated and case remanded mem., 692 F.2d 760 (7th Cir.1982); Rutledge v. Arizona Bd. of Regents, 660 F.2d 1345, 1352 (9th Cir.1981), cert. granted sub nom., Kush v. Rutledge, —— U.S. ——, 102 S.Ct. 3508, 73 L.Ed.2d 1382 (1982); Holmes v. Wampler, 546 F.Supp. 500, 503–04 (E.D.Va.1982); Henderson v. Counts, 544 F.Supp. 149, 151–52 (E.D.Va.1982); Pantoja v. City of Gonzales, 538 F.Supp. 335 (N.D.Cal.1982); Toins v. Ignash, 534 F.Supp. 452 (E.D.Mich.1982); Whorley v. Karr, 534 F.Supp. 88 (W.D.Va.1981); Eberle v. Baumfalk, 524 F.Supp. 515, 518 (N.D.Ill.1981); Peery v. Davis, 524 F.Supp. 107 (E.D.Va.1981); Spriggs v. City of Chicago, 523 F.Supp. 138, 143 n. 5 (N.D.Ill.1981); Meshkov v. Abington Township, 517 F.Supp. 1280 (E.D.Pa.1981); Kirby, supra note 41; Comment, supra note 41; at 1057–59.

*Id.* at 183, 81 S.Ct. at 482 (emphasis supplied).[43]

Finally, the Court held that the police officers were acting under color of state law within the meaning of the statute even though their conduct had not been authorized by the state, stating that § 1983 was intended to reach any act under color of state law, even if unauthorized under state law, since the statute reaches abuse of authority as well as authorized but unconstitutional acts. *See* 365 U.S. at 183–87, 81 S.Ct. at 481–84.

*Monroe* established a cardinal principle of the jurisprudence of § 1983: persons who have been deprived of constitutional rights may seek federal relief even if a remedy could also be obtained in the state courts. This principle has been consistently followed in post-*Monroe* cases.[44] Any interpretation of *Parratt,* therefore, must also accommodate the holding of *Monroe,* which remains the law of the land.

### VI

For at least two reasons, it seems unlikely that *Parratt* was intended to preclude any § 1983 action other than a challenge to an established state procedure. First, there is no evidence in the legislative history of § 1983 that Congress intended to provide federal relief only to those injured by established state procedures, yet leave victims of persons who, acting under color of state law, abused their authority, to the state courts.

Since the suggested narrow construction of § 1983 presupposes that state measures were adequate to remedy unauthorized deprivations of constitutional rights and since the identical state relief could be obtained for state-authorized acts with the aid of Supreme Court review, this narrow construction would reduce the statute to having merely a jurisdictional function, shifting the load of federal supervision from the Supreme Court [which could review state post-deprivation actions for constitutional error *without the aid of § 1983*] *to the lower courts and providing a federal tribunal for fact findings in cases involving authorized action.* Such a function could be justified on various grounds. It could, for example, be argued that the state courts would be less willing to find a constitutional violation in cases involving "authorized action" and that therefore the victim of such action would bear a

---

**43.** While *Monroe's* additional holding that municipalities may not be sued under § 1983 has since been overruled, its holding on this point has not and remains binding precent. *See* note 44, *infra.*

**44.** *See Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 104, 102 S.Ct. 177, 180, 70 L.Ed.2d 271 (1981); *Allen v. McCurry,* 449 U.S. 90, 99, 101 S.Ct. 411, 417, 66 L.Ed.2d 308 (1980); *Paul v. Davis,* 424 U.S. 693, 710 n. 5, 96 S.Ct. 1155, 1165 n. 5, 47 L.Ed.2d 405 (1976); *Wilwording v. Swenson,* 404 U.S. 249, 251, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971) (per curiam); *McNeese v. Board of Educ.,* 373 U.S. 668, 671–74, 83 S.Ct. 1433, 1435–37, 10 L.Ed.2d 622 (1963); *Brewer v. Blackwell,* 692 F.2d 387, 394 n. 10 (5th Cir.1982); *Walker v. Wegner,* 624 F.2d 60, 61 (8th Cir.1980); *Clappier v. Flynn,* 605 F.2d 519, 528 (10th Cir.1979); *Graves v. Olgiati,* 550 F.2d 1327, 1329 (2d Cir. 1977); *Gillette v. McNichols,* 517 F.2d 888, 890 (10th Cir.1975); *Drexler v. Southwest Dubois School Corp.,* 504 F.2d 836 (7th Cir.1974) (en banc); *Freitag v. Carter,* 489 F.2d 1377, 1380–81 (7th Cir.1973); *Devlin v. Sosbe,* 465 F.2d 169 (7th Cir.1972); *Rocha v. Sowers,* 454 F.2d 1155 (5th Cir.1972) (per curiam); *Jones v. Decker,* 436 F.2d 954 (5th Cir.1970) (per curiam); *York v. Story,* 324 F.2d 450, 456 (9th Cir.1963), *cert. denied,* 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964); *Cohen v. Norris,* 300 F.2d 24, 34 (9th Cir.1962); *Moss v. Jones,* 288 F.2d 342, 344 (5th Cir.), *cert. denied,* 368 U.S. 868, 82 S.Ct. 98, 7 L.Ed.2d 65 (1961). *See generally Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 19–22, 98 S.Ct. 1554, 1565–67, 56 L.Ed.2d 30 (1978); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

The Supreme Court has also recently reaffirmed the holding of *Monroe* that a § 1983 plaintiff need not seek available state remedies prior to filing federal suit, stating that Congress intended § 1983 plaintiffs to have immediate access to federal courts because it believed available state remedies were likely to be inadequate. *See Patsy v. Board of Regents,* —— U.S. ——, 102 S.Ct. 2557, 2561–64, 73 L.Ed.2d 172 (1982). In the course of its discussion in this post-*Parratt* and *Logan* case, the Court reaffirmed the holding of Monroe that § 1983 was intended to be supplementary to any available state remedies. *See id.* 102 S.Ct. at 2563.

greater burden in that he would more likely have to carry his case to this Court, and once here, might be bound by unfavorable state court findings. But the legislative debates do not disclose congressional concern about the burdens of litigation placed upon the victims of "authorized" constitutional violations contrasted to the victims of unauthorized violations. Neither did Congress indicate an interest in relieving the burden placed on this Court in reviewing such cases.

The statute becomes more than a jurisdictional provision only if one attributes to the enacting legislature the view that a deprivation of a [federal] constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a [federal] constitutional right. This view, by no means unrealistic as a common-sense matter, is, I believe, more consistent with the flavor of the legislative history than is a view that the primary purpose of the statute was to grant a lower court forum for fact findings. For example, the tone is surely one of overflowing protection of constitutional rights, and there is not a hint of concern about the administrative burden on the Supreme Court, when Senator Frelinghuysen says:

"As to the civil remedies, for a violation of these privileges, we know that when the courts of a State violate the provisions of the Constitution or the law of the United States there is now relief afforded by a review in the Federal courts. And since the 14th Amendment forbids any state from making or enforcing any law abridging these privileges and immunities, as you cannot reach the Legislatures, the injured party should have an original action in our Federal courts, so that by injunction or by the recovery of damages he could have relief against the party who under color of such law is guilty of infringing his rights. As to the civil remedy no one, I think, can object."

*Monroe,* 365 U.S. at 195–97, 81 S.Ct. at 488–89 (Harlan, J., concurring).[45] *See id.* at 178–80, 81 S.Ct. at 479–80 (citing similar comments in the legislative history); *id.* at 197–98, 81 S.Ct. at 489 (Harlan, J., concurring) (same).[46]

It is, in short, unlikely that the same Congress that, when enacting § 1983 to enforce the fourteenth amendment, stated its view that all victims of constitutional violations should have access to a federal forum in the first instance would have thought § 1983 permitted persons to obtain federal relief only when the constitutional violation was authorized by the state.

Second, the suggested interpretation of *Parratt* would create an irreconcilable tension between *Parratt* and a long line of cases, including at least one post-*Parratt* decision of the Supreme Court, which have held that even where a state official's conduct is not authorized by state law, abuse of his authority which results in violations of constitutional rights is actionable under § 1983.[47] *Monroe* itself was such a case;

---

**45.** *See also Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945) (plurality opinion) ("Acts of officers who undertake to perform their official duties are included [within the ambit of the civil rights acts] whether they hew to the line of their authority or overstep it. If, as suggested, the statute was designed to embrace only action which the State in fact authorized, the words 'under color of law' were hardly apt words to express the idea.").

**46.** Justice Harlan also expressed his view the legislative history contained no indication that Congress viewed authorized violations of constitutional rights as any more serious than unauthorized ones. *See id.* 365 U.S. at 198–99, 81 S.Ct. at 490.

**47.** *See, e.g., Lugar v. Edmondson Oil Co.,* —— U.S. ——, 102 S.Ct. 2744, 2756, 73 L.Ed.2d 482 (1982); *Owen v. City of Independence,* 445 U.S. 622, 650–51, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673 (1980); *Palmer v. Columbia Gas, Inc.,* 479 F.2d 153, 161 (6th Cir.1973); *Wheeler v. Glass,* 473 F.2d 983, 985 (7th Cir.1973); *Basista v. Weir,* 340 F.2d 74, 80–81 (3d Cir.1965); *Marshall v. Sawyer,* 301 F.2d 639, 646 (9th Cir. 1962); *Baldwin v. Morgan,* 251 F.2d 780, 786–87 (5th Cir.1958). *See also United States v.*

the conduct alleged there was fully actionable under state law. *Parratt* did not purport to overrule *Monroe* or its multitudinous progeny, yet the suggested interpretation of it would have that effect. We doubt *Parratt* was intended to be such a dramatic departure from precedent and until *Monroe* is overruled we think we are obliged to follow it.

What then is the significance of the distinction drawn in *Parratt* and *Logan* between "random and unauthorized" conduct and conduct pursuant to "an established state procedure"? To answer this question, we think it essential to examine the context in which the *Parratt* Court adverted to the random and unauthorized nature of the conduct at issue there. The Court observed that when conduct is random and unauthorized, it is impracticable to provide any type of notice and hearing prior to the conduct.

> The justifications which we have found sufficient to uphold taking of property without any predeprivation process are applicable to a situation such as the present one involving a tortious loss of a prisoner's property as a result of a random and unauthorized act by a state employee. In such a case, the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property, although attributable to the State as action under "color of law," is in almost all cases beyond the control of the State. *Indeed, in most cases it is not only impracticable, but impossible to provide a meaningful hearing before the deprivation.*

*Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941); *Iowa-Des Moines Nat'l Bank v. Bennett,* 284 U.S. 239, 246, 52 S.Ct. 133, 136, 76 L.Ed. 265 (1931); *Home Tel. & Tel. Co. v. City of Los Angeles,* 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913); *Brown v. Miller,* 631 F.2d 408, 411 (5th Cir.1980); *Cohen v. Norris,* 300 F.2d 24, 30 (9th Cir.1962).

**48.** The Court was careful to note that Taylor had not argued that the prison's procedures for handling incoming mail were substantively un-

*Parratt,* 451 U.S. at 541, 101 S.Ct. at 1915 (emphasis supplied). The Court concluded that Parratt was a case with no "contention that it was practicable for the state to provide a predeprivation hearing." *Id.* at 543, 101 S.Ct. at 1916. Since the only claim Taylor had forwarded was the right to a predeprivation hearing,[48] it was inevitable that the Court would conclude that since that state simply could not have provided a predeprivation hearing, due process, not requiring the impossible, would be satisfied by a postdeprivation hearing in the Nebraska state courts.

That a due process claim can still be made based on a random and unauthorized act is demonstrated by *Logan.* There, the negligent failure to timely convene a factfinding conference was negligent, random and unauthorized, and Logan could have sought relief against the commission in state court for its failure to comply with state law. Nevertheless, the Court held that Logan had been denied due process since Illinois had "destroy[ed] his entitlement without according him proper procedural safeguards." 455 U.S. at 436, 102 S.Ct. at 1158. *Logan* squarely holds that, where it is practicable for the state to provide a predeprivation hearing, due process requires it to do so and the availability of a postdeprivation remedy does not provide due process. "[T]he Court's decisions suggest that, absent 'the necessity of quick action by the State or the impracticality of providing any predeprivation process,' a postdeprivation hearing here would be constitutionally inadequate." *Logan,* 455 U.S. at 436, 102 S.Ct. at 1158 (quoting *Parratt,* 451 U.S. at 539, 101 S.Ct. at 1914). *Logan* confines *Parratt* to the situation where

constitutional. "There is no contention that the [prison's] procedures themselves are inadequate...." *Id.* Moreover, since Nebraska was willing to compensate Taylor in a postdeprivation tort action, Taylor could not assert the absolute right to obtain redress when the state loses his property, since Nebraska had not yet denied him that right. Rather, Taylor could only assert the right to a hearing *before* his property was lost.

state postdeprivation remedies supply due process because it was impracticable for the state to have offered any predeprivation process.[49] This result is consistent with general principles of due process,[50] and provides an interpretation of *Parratt* that creates no conflict with prior precedents.[51]

The preceding analysis suggests two limitations on *Parratt*.[52] First, where it is practicable, and hence constitutionally required that the state provide a predeprivation hearing, the availability of postdeprivation remedies will not be a defense to a § 1983 action. In such a case, the state has

**49.** *See Weiss v. Lehman,* 676 F.2d 1320, 1321–22 (9th Cir.1982); *Wakinekona v. Olim,* 664 F.2d 708, 715 (9th Cir.1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 2294, 73 L.Ed.2d 1299 (1982); *Juncker v. Tinney,* 549 F.Supp. 574, 577–79 (D.Md.1982); *Al-Mustafa Irshad v. Spann,* 543 F.Supp. 922, 925–27 (E.D.Va.1982); *Waterstraat v. Central State Hosp.,* 533 F.Supp. 274, 276 (W.D.Va.1982); *Graham v. Mitchell,* 529 F.Supp. 622, 623–24 (E.D.Va. 1982); *Haygood v. Younger,* 527 F.Supp. 808, 813–14 (E.D.Cal.1981); *Sheppard v. Moore,* 514 F.Supp. 1372 (M.D.N.C.1981); Casenote, *supra* note 33, at 1236–38; Note, *The Supreme Court, 1981 Term, supra,* n. 41, at 102–03.

**50.** *See* Part II, *supra.*

**51.** Some courts have tried to limit *Parratt* by arguing that it applies only to negligent, and not intentional deprivations of constitutionally protected interests. *See, e.g., Howse v. DeBerry Correctional Institute,* 537 F.Supp. 1177, 1178–79 (M.D.Tenn.1982); *Peters v. Township of Hopewell,* 534 F.Supp. 1324, 1333–34 (D.N.J. 1982); *Tarkowski v. Hoogasian,* 532 F.Supp. 791, 794–95 (N.D.Ill.1982); *Parker v. Rockefeller,* 521 F.Supp. 1013, 1016 (N.D.W.Va.1981). We cannot agree. *See Palmer v. Hudson,* 697 F.2d 1220 at 1222–1223 (4th Cir.1983).

> The logic of *Parratt* permits no principled distinction between intentional and negligent deprivations of property interests. An intentional theft of an inmate's property is no less a "random and unauthorized act," than is a negligent failure to follow prison procedures. Both result not from an established State procedure but from a violation of an established procedure. Therefore, in both cases it is impossible for the State to predict when a deprivation will occur, and it is not possible for the State to provide a hearing prior to the deprivation.

*Moore v. Gluckstern,* 548 F.Supp. 165, 167 (D.Md.1982) (citations omitted). *Accord, Juncker v. Tinney,* 549 F.Supp. 574, 577–79 (D.Md.1982); *Henderson v. Counts,* 544 F.Supp. 149, 151–52 (E.D.Va.1982); *Frazier v. Collins,* 538 F.Supp. 603, 607 (E.D.Va.1982); Casenote, *supra* note 33, at 1244. *See also Rutledge v. Arizona Board of Regents,* 660 F.2d 1345, 1352 (9th Cir.1981) (by implication), *cert. granted sub nom., Kush v. Rutledge,* —— U.S. ——, 102 S.Ct. 3508, 73 L.Ed.2d 1382 (1982).

**52.** *Logan* suggests a third limitation in addition to those discussed below. After stating that a postdeprivation remedy for Logan would be constitutionally inadequate, the Court continued,

> That is particularly true where, as here, the State's only post-termination process comes in the form of an independent tort action. Seeking redress through a tort suit is apt to be a lengthy and speculative process, which in a situation such as this will never make the complainant entirely whole: the Illinois Court of Claims Act does not provide for reinstatement—as the appellee conceded at oral argument—and even a successful suit will not entirely vindicate Logan's right to be free from discriminatory treatment.

455 U.S. at 436–37, 102 S.Ct. at (citation and footnote omitted). At some point it appears that a postdeprivation state legal remedy is too "lengthy and speculative" to provide due process. *See Evans v. City of Chicago,* 689 F.2d 1286, 1298–99 (7th Cir.1982). However, this could not always be the case or *Parratt* would have been implicitly overruled by *Logan.* We need not explore the scope of this limitation here, except to note its existence. *See also Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 19–22, 98 S.Ct. 1554, 1565–67, 56 L.Ed.2d 30 (1978) (utility customers' ability to challenge termination of service in state courts does not provide due process since that remedy is too "bounded" by procedural constraints and potential for delay).

Under some circumstances, state remedies will provide for less relief than does § 1983. While *Parratt* held that punitive damages need not be provided, other limitations on state remedies may post greater problems. For example, where the postdeprivation remedy is a tort action under Illinois law, the plaintiff will be unable to recover for injuries caused by an employee's mere negligence, due to the Government Employee's Tort Immunity Act, Ill.Rev.Stat. ch. 85, § 2–202 (1981). Under those circumstances, it may be that plaintiff's inability to get a hearing on the merits in state court will justify relief under § 1983. *Compare Howse v. DeBerry Correctional Institute,* 537 F.Supp. 1177, 1179–82 (M.D.Tenn.1982) *with Eberle v. Baumfalk,* 524 F.Supp. 515, 518–19 (N.D.Ill.1981). *Cf. Martinez v. California,* 444 U.S. 277, 284 & n. 8, 100 S.Ct. 553, 558 n. 8, 62 L.Ed.2d 481 (1980) (state law cannot immunize conduct from liability under § 1983). *See generally Monroe,* 365 U.S. at 196 n. 5, 81 S.Ct. at 488 n. 5 (Harlan, J., concurring).

failed to provide due process precisely because the only remedy available has come after the deprivation has occurred. Since the state has failed to provide a constitutionally required predeprivation hearing, the constitutional violation is complete at the time the deprivation occurs. By failing to provide the requisite predeprivation hearing, the state official has deprived the plaintiff of a constitutionally protected interest without due process of law and the four elements of a § 1983 due process action described in *Parratt* are complete.[53] This limitation is commonsensical: where due process requires a predeprivation hearing, the availability of a postdeprivation hearing is no defense. Thus, we conclude that *Parratt* was not intended to overrule the line of cases holding that failure to provide a constitutionally required predeprivation hearing is actionable under § 1983.[54]

Second, *Parratt* does not bar a § 1983 action based on the assertion of a substantive constitutional right, rather than the right to have a deprivation accompanied by certain procedural protections. This follows from Justice Blackmun's observation

in *Parratt*, 451 U.S. at 545, 101 S.Ct. at 1917 (Blackmun, J., concurring), subsequently adopted by the Court in *Logan*, 455 U.S. at 436, 102 S.Ct. at 1158,[55] that some governmental conduct violates due process no matter what types of procedural protections accompany the conduct. In such cases, those acting under color of state law violate a substantive constitutional right entirely separate from the right to procedural due process,[56] and those injured may seek redress under the due process clause.[57] In cases where the right asserted does not depend on the procedural protections accorded the plaintiff, the availability of a postdeprivation hearing is no defense, since the constitutional violation exists independent of the procedures for redressing the deprivation that are available. By violating such substantive rights, the state actors deprive persons of constitutional rights irrespective of the procedures employed, and the constitutional violation is complete at the time of the deprivation. It is for this reason that courts have uniformly held, often with little analysis, that *Parratt* does not bar substantive § 1983 claims.[58]

**53.** *See Weiss v. Lehman,* 676 F.2d 1320 (9th Cir.1982); *Wakinekona v. Olim,* 664 F.2d 708 (9th Cir.1981), *cert. granted,* ── U.S. ──, 102 S.Ct. 2294, 73 L.Ed.2d 1299 (1982); *Bryant v. Commissioner of Social Services,* 530 F.Supp. 1175, 1185 n. 6 (S.D.N.Y.1982); *Riley v. Johnson,* 528 F.Supp. 333 (E.D.Mich.1981); *Haygood v. Younger,* 527 F.Supp. 808, 813–14 (E.D. Cal.1981). *See also Vinson v. Freeman,* 524 F.Supp. 63, 66 (E.D.Pa.1981). *Cf. Fidelity S. & L. Ass'n v. Federal Home Loan Bd.,* 689 F.2d 803, 814 (9th Cir.1982) (where due process requires only a postdeprivation hearing which was available under state law *Parratt* bars claim); *Engblom v. Carey,* 677 F.2d 957 (2d Cir.1982) (same).

**54.** *See, e.g., Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1974).

**55.** *See Brewer v. Blackwell,* 692 F.2d 387, 394–95 & n. 11 (5th Cir.1982); *Evans v. City of Chicago,* 689 F.2d 1286, 1289 (7th Cir.1982).

**56.** *See Perry v. Sindermann,* 408 U.S. 593, 597–98, 96 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972). *See also Buise v. Hudkins,* 584 F.2d 223, 229–30 (7th Cir.1978), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979).

**57.** *See Paul v. Davis,* 424 U.S. 693, 699–701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). *Cf. Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (action challenging confinement to jail not cognizable under § 1983 since the confinement was not in violation of the fourth amendment).

**58.** *See Parratt,* 451 U.S. at 545, 101 S.Ct. at 1917 (Blackmun, J., concurring); *id.* at 552–53, 101 S.Ct. at 1921 (Powell, J., concurring in the result); *Brewer v. Blackwell,* 692 F.2d 387, 395 (5th Cir.1982); *Evans v. City of Chicago,* 689 F.2d 1286, 1298 (7th Cir.1982); *Williams v. Red Bank Bd. of Educ.,* 662 F.2d 1008, 1022–24 & n. 17 (3d Cir.1981); *Duncan v. Poythress,* 657 F.2d 691, 704–05 (5th Cir.1981), *cert. dismissed,* ── U.S. ──, 103 S.Ct. 368, 74 L.Ed.2d 504 (1982); *Robinson v. Moreland,* 655 F.2d 887, 890 (8th Cir.1981); *Abraham v. County of Washoe,* 547 F.Supp. 548 (D.Nev.1982); *Holmes v. Wampler,* 546 F.Supp. 500 (E.D.Va. 1982); *Henderson v. Counts,* 544 F.Supp. 149 (E.D.Va.1982); *Sager v. City of Woodland*

The correctness of this analysis is confirmed by *Logan,* for it involved a substantive claim. The Court stated that Illinois' rule of law depriving Logan of his property in an arbitrary fashion was substantively unconstitutional because it created an unjustifiable risk of error. "A system or procedure that deprives persons of their claims in a random manner, as is apparently true [of the Illinois rule regarding factfinding conferences], necessarily presents an unjustifiably high risk that meritorious claims will be terminated." 455 U.S. at 434–35, 102 S.Ct. at 1157. The evil condemned in *Logan* lay not in Illinois' failure to provide Logan with notice and hearing before or-

dering his claim dismissed; he did receive notice and a hearing in the form of his appeal to the Illinois Supreme Court. Rather, the evil lay in the fact that the *reason* Illinois gave him for terminating the claim was impermissible, given the unjustifiable risk of error that the Illinois rule created.[59]

■ We conclude that *Parratt* does not bar a § 1983 suit despite the availability of state postdeprivation remedies where either the Constitution requires a predeprivation hearing, or where the deprivation is unconstitutional irrespective of the procedural protections accompanying it which are offered by the state.[60] In both situations, the

Park, 543 F.Supp. 282 (D.Colo.1982); *McKay v. Hammock,* 542 F.Supp. 972, 973 n. 1 (D.Colo. 1982); *Schiller v. Strangis,* 540 F.Supp. 605 (D.Mass.1982); *Scott v. Donovan,* 539 F.Supp. 255, 258 (N.D.Ga.1982); *McKenna v. County of Nassau,* 538 F.Supp. 737 (E.D.N.Y.1982); *Howse v. DeBerry Correctional Institute,* 537 F.Supp. 1177 (M.D.Tenn.1982); *Peters v. Township of Hopewell,* 534 F.Supp. 1324 (D.N. J.1982); *Tarkowski v. Hoogasian,* 532 F.Supp. 791, 794–95 (N.D.Ill.1982); *Haygood v. Younger,* 527 F.Supp. 808, 810–12 (E.D.Cal.1981); *Morrell v. McFarland,* 527 F.Supp. 324, 327 & n. 2 (N.D.W.Va.1981); *Watson v. McGee,* 527 F.Supp. 234 (S.D.Ohio 1981); *Parker v. Rockefeller,* 521 F.Supp. 1013 (N.D.W.Va.1981). The only case we know of to the contrary is *Rutledge v. Arizona Bd. of Regents,* 660 F.2d 1345, 1352 (9th Cir.1981), *cert. granted sub nom. Kush v. Rutledge,* —— U.S. ——, 102 S.Ct. 3508, 73 L.Ed.2d 1382 (1982). However, *Rutledge* was decided before *Logan,* and did not consider the difference between claims under procedural and substantive due process. In any event, the Ninth Circuit appears to be backing away from *Rutledge. See Weiss v. Lehman,* 676 F.2d 1320 (9th Cir.1982); *Wakinekona v. Olim,* 664 F.2d 708 (9th Cir.1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 2294, 73 L.Ed.2d 1299 (1982). The court of appeals for this circuit has continued to entertain substantive due process claims after *Parratt. See, e.g., Merritt v. Faulkner,* 697 F.2d 761 at 764 (7th Cir.1983) (deliberate indifference to serious medical needs of prisoner); *Freeman v. Franzen,* 695 F.2d 485 at 491–92 (7th Cir.1982) (use of excessive force by prison guards); *Barbian v. Panagis,* 694 F.2d 476 (7th Cir.1982) (arbitrary deprivation of property); *Blake v. Katter,* 693 F.2d 677, 682 (7th Cir.1982) (excessive use of force during arrest); *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982) (unjustified shooting). *See also Palmer v. Hudson,* 697 F.2d 1220 at 1225 (4th Cir.1983).

**59.** Moreover, in *Logan,* six justices expressed their view that, notwithstanding Logan's postdeprivation state remedy, Illinois' rule of law was unconstitutional on equal protection grounds, by discriminating between claims heard before and after 120 days for no rational reason. *See* 455 U.S. at 438–42, 102 S.Ct. at 1159–61 (opinion of Blackmun, J.); *id.* at 443–44, 102 S.Ct. at 1161–62 (Powell, J., concurring in the judgment). *Logan* also limited *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), involving corporal punishment in the schools, to its specific facts. *See* 455 U.S. at 436 n. 10, 102 S.Ct. at 1158 n. 10. *Ingraham* also is limited in that it dealt only with the right to procedural, and not substantive due process. *See Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 19–21 & n. 24, 98 S.Ct. 1554, 1565–66 & n. 24, 56 L.Ed.2d 30 (1978).

**60.** Of course, we are bound by the decisions of the United States Court of Appeals for the Seventh Circuit, and look to that court for guidance in interpreting *Parratt.* However, the court has not yet offered its definitive view on the questions we face here.

In a pre-*Logan* decision, the court held that negligent deprivations of prisoners' property may be compensated by state postdeprivation remedies consistently with due process, but intentional deprivations may not. It remanded the case for a determination whether defendants' conduct was intentional. *See Madyun v. Thompson,* 657 F.2d 868, 873 (7th Cir.1981). *See also Shango v. Jurich,* 681 F.2d 1091, 1105 n. 22 (7th Cir.1982) (following *Madyun* ); *Richardson v. City of Indianapolis,* 658 F.2d 494, 502 n. 3 (7th Cir.1981) (same), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1442, 71 L.Ed.2d 657 (1982); *Bonner v. Coughlin,* 657 F.2d 931, 933 n. 3 (7th Cir.1981) (dictum) (same); *McCowen v. City of Evanston,* 534 F.Supp. 243, 248–49 (N.D.Ill. 1982) (same).

In *Ellis v. Hamilton,* 669 F.2d 510 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982); the court held that due process was not denied when the plaintiffs' grandchildren were removed from their homes and put up for adoption, since state law provided them with various pre- and postdeprivation remedies. The Court cited *Parratt,* but also noted that the case involved "peculiarly local" questions of family law that ought not to be decided in the federal courts. Since *Ellis* involved an intentional deprivation, it casts some doubt on the vitality of the *Madyun* approach. A similar result was reached in *Dusanek v. Hannon,* 677 F.2d 538 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982). Plaintiff challenged an intentional act, his dismissal as a teacher, but received predeprivation notice and opportunity to defend himself. Dusanek was thought to be psychologically incapable of performing his duties, and was asked to either submit to a psychiatric examination or else face dismissal proceedings. The court noted, "The teacher is given the option of a hearing before any property interest is taken away." *Id.* at 542. The court held that these predeprivation proceedings satisfied due process, citing *Parratt.*

In *Flower Cab Co. v. Petitte,* 685 F.2d 192 (7th Cir.1982) (on motion to stay injunction), *injunction vacated and case remanded mem.,* 692 F.2d 760 (7th Cir.1982), the district court had enjoined the City of Chicago's Commissioner of Consumer Services from refusing to process applications to transfer taxicab licenses. The commissioner had announced a new policy of refusing to process all applications, in violation of a city ordinance providing for transferability, and, in the district court's view, deprived license holders of property without due process. The court stayed the injunction, noting that plaintiffs had a state mandamus remedy against the commissioner, which provided due process and meant that the case "probably" fell within *Parratt.* The court wrote that there was no contention that the deprivation was caused by established state or otherwise officially sanctioned procedures or that the mandamus remedy was inadequate. Neither was there a contention that plaintiffs had been treated arbitrarily or discriminatorily; the commissioner's policy was uniform and applied even-handedly. The court also criticized the apparent holding of *Madyun,* noting that its discussion was "too brief" to constitute the circuit's position on *Parratt.*

*Flower Cab,* at first blush, seems contrary to the result we reach. However, we think the court's concession that no arbitrary or discriminatory conduct had been alleged was critical to its conclusion. When a uniform "legislative" action is taken, due process does not require individualized notice and hearing, *see Logan,* 455 U.S. at 423–33, 102 S.Ct. at 1151–56; *Dixon v. Love,* 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977); *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971); *Bi-Metallic Investment Co. v. State Bd.,* 239 U.S. 441, 445–46, 36 S.Ct. 141, 142–43, 60 L.Ed. 372 (1915). Thus, plaintiffs had no procedural due process claim. They also had no substantive claim since they were not seeking damages for an unjustified taking of property, only the preliminary injunction was before the court. Plaintiffs' only claim was that the commissioner had exceeded her authority under state law, and such a claim without more is not actionable under § 1983, *see, e.g., Lombardi v. Tauro,* 470 F.2d 798 (1st Cir.1972), *cert. denied,* 412 U.S. 919, 93 S.Ct. 2734, 37 L.Ed.2d 145 (1973).

In any event, the significance of *Flower Cab* is undercut first by the court's concession that its conclusions were merely tentative, *see* 685 F.2d at 194, second by the fact that the appeal was subsequently decided in an unpublished order without precedential weight, *see* 7th Cir.R. 35(b)(2)(iv), and third by the court's subsequent decision in *Evans v. City of Chicago,* 689 F.2d 1286 (7th Cir.1982), which held the city's practice of delaying payment on tort judgments against it unconstitutional. The court held the judgments were "property" and that the delay amounted to a deprivation. *See id.* at 1296–98. The court then held that a postdeprivation state action for payment did not provide due process, stating that *Parratt* does not apply to any systematic or intentional deprivation. *See id.* at 1298. It also noted that the city had forwarded no justification for its delay, and that "takings without any justification are 'governmental actions that even if undertaken with a full panoply of procedural protection, are in and of themselves, antithetical to fundamental notions of due process.' " *Id.* (quoting *Parratt,* 451 U.S. at 545, 101 S.Ct. at 1917 (Blackmun, J., concurring)). The court criticized *Flower Cab* for not fully considering *Logan. See id.* at 1299 n. 15. *Evans* confirms our view that substantive claims survive *Parratt. See also Wolf-Lillie v. Sonquist,* 699 F.2d 864 (7th Cir. 1983).

Finally, there is *Johnson v. Miller,* 680 F.2d 39 (7th Cir.1982). There, Johnson was twice arrested pursuant to a warrant mistakenly issued in her name. The first arrest was pursuant to a valid warrant not actionable under *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). It was alleged that in the second arrest, however, the arresting officer had reason to know the warrant was mistakenly issued. The court held that "The execution of a warrant by an officer who if he were more careful might have noticed that the warrant had been issued by mistake is not the stuff out of which a proper federal case is made." 680 F.2d at 42. The court also observed, without citing *Parratt,* that the second

plaintiff has been denied something he or she is constitutionally entitled to—a predeprivation hearing or the right to be free from some form of substantive governmental misconduct. As a result, the four elements of a § 1983 due process claim are present. Someone (1) acting under color of state law has (2) deprived the plaintiff of (3) a constitutionally protected interest (4) without due process of law. Once that happens, § 1983 is available, whether or not there are also postdeprivation state remedies.

## VII

It remains only to apply the analysis we have developed to the facts of this case.

Plaintiff's claim that he was deprived of property without due process of law survives *Parratt*. As we held in Part II, *supra,* plaintiff has alleged a constitutionally protected property interest, and on the present record we cannot say that it would have been impractical for defendants to accord him any predeprivation process at all. Since plaintiff has stated a claim of constitutional entitlement to a predeprivation hearing, the availability of a postdeprivation state law remedy is no defense.

Plaintiff's retaliation claim also survives *Parratt*. Plaintiff has a substantive right not to be punished for exercising his first amendment rights. If defendants did indeed punish him for his protected speech, then the punishment is constitutionally illegitimate no matter what sorts of procedural protections accompany it, and the availability of a postdeprivation state law remedy is no defense. While the Constitution does secure a large measure of "autonomy" for defendants in making employment decisions, that autonomy does not extend to punishing conduct protected by the Constitution. Any such punishment is in itself fundamentally unfair and a violation of the due process clause of the fourteenth amendment.

Defendants' motion to dismiss the complaint is denied. The court will entertain an application for certification of the questions decided herein under 28 U.S.C. § 1292(b) (1976) if the defendants so desire. For the present, the discovery/trial schedule heretofore established will stand.

---

arrest was "fully actionable under state law." *Id.*

We think the holding of *Johnson* is confined to its specific facts. The plaintiff had conceded that she was the person named, albeit mistakenly, in the second warrant. That being the case, we take *Johnson* to mean that a police officer is not liable for executing a warrant on the person named in the warrant if he is not responsible for the fact that the warrant was mistakenly issued. We add this qualification since the court did state that Johnson might be able to obtain relief against those responsible for the negligent issuance of a mistaken warrant. *See id.* at 41 (citing *Powe v. City of Chicago,* 664 F.2d 639 (7th Cir.1981)). The court went on to explain that "The Fourth Amendment and section 1983 have higher objects in view than getting arresting officers to backstop the mistakes of their superiors." *Id.* at 42. Moreover, since the court conceded that plaintiff has a remedy against those responsible for the mistake, it seems clear the court did not intend to hold that § 1983 is unavailable whenever conduct is "fully actionable" under state

law, since Johnson presumably has a state law remedy against those responsible for the mistake as well as against the arresting officer. *Evans* confirms the view that this circuit does not bar § 1983 suits whenever there is a state law remedy. *See also Brewer v. Blackwell,* 692 F.2d 387, 395 n. 11 (5th Cir.1982).

Our approach is also consistent with *Bonner v. Coughlin,* 517 F.2d 1311 (7th Cir.1975), *modified en banc,* 545 F.2d 565 (1976), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978), which was cited with approval in *Parratt,* 451 U.S. at 541–42, 101 S.Ct. at 1915–16. There, Bonner claimed that prison officials' negligence led to the loss of his property. The court held that Bonner's state postdeprivation tort remedy supplied due process, analogizing his claim to a condemnation case where postdeprivation compensation satisfies due process. *See* 517 F.2d at 1319–20 & n. 25. Nothing in *Bonner* precludes a § 1983 action where plaintiff asserts a substantive constitutional right, *see id.* at 1315–17, 1320–21, or where the failure to provide a predeprivation hearing itself violates the Constitution, *see id.* at 1320.