FRANCIS M. GANZ, Plaintiff-Appellant, v. JAMES B. ZAGEL, Director, The Department of State Police, Defendant-Appellee.

First District (1st Division)   No. 1—88—1855

Opinion filed December 4, 1989.—Rehearing denied February 13, 1990.

Stanley H. Jakala, of Berwyn, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Valerie J. Peiler, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:
Plaintiff, Francis M. Ganz, appeals from the trial court's order dismissing his amended complaint for declaratory judgment filed against James B. Zagel, Director, State of Illinois, Department of State Police (the Department). Plaintiff, a former probationary State Police trooper, had sought a declaration that he had a property right to a change of field training officers (FTOs), a procedure set forth in the Department's Field Training Manual, and a declaration that his resignation from the Department should be rescinded. For the following reasons, the judgment of the trial court is affirmed.

The record indicates that on December 15, 1985, the Department hired plaintiff as a probationary State Police trooper. On April 4, 1986, after 16 weeks at the Springfield State Police Academy, plaintiff graduated and was assigned to field training. During field training, plaintiff initially received favorable ratings from three State Police troopers. He was then assigned to field training officer Eileen Daley. As a result of a personality conflict with FTO Daley, on May 31, 1986, plaintiff submitted a written request to Master/Sergeant Hall asking for a reassignment to a different FTO. The request was denied. Consequently, on June 5, 1986, plaintiff resigned from the Department. On July 14, 1986, plaintiff requested that his resignation be rescinded. The Department refused his request on October 31, 1986.

On March 30, 1987, plaintiff filed his complaint for declaratory

judgment, requesting that: (1) the court declare that, pursuant to the Department's Field Training Manual, plaintiff had a property right to request a change in FTO's; (2) plaintiff's resignation be rescinded on the ground that it was coercive and involuntary as the result of the denial of his property right to change FTOs; (3) plaintiff be reinstated to the probationary rank of a State Police trooper; and (4) the Department pay the plaintiff reasonable attorney fees and court costs. The trial court granted the Department's motion to dismiss for failure to state a cause of action without prejudice and, on October 9, 1987, plaintiff filed his amended complaint for declaratory judgment.

In his amended complaint, plaintiff added allegations that: (1) the Department's custom and practice to grant FTO changes had been verbally stated to him by Master/Sergeant Hall at one of the academy sessions; (2) the custom and practice had been implemented for five probationary officers; (3) the custom and practice together with the field training program's principal goal impose an obligation upon the Department; and (4) based upon the manual provisions and the custom and practice, plaintiff had a property right to such a change. The Department moved to dismiss plaintiff's amended complaint on the ground that he had no property right to request and to be granted a change in FTOs. The trial court granted the Department's motion, stating:

> "It is this Court's opinion that the provisions of the manual requiring a supervisor's discretion do not create a property right in this regard, nor has plaintiff effectively pleaded a case for a long standing custom and practice within the Department. He names five officers, presumably part of his class, who were granted changes of their F.T.O.'s, their field training officers. This is not sufficient to create a property right in the Plaintiff.
>
> It is well established case law that a probationary police officer has no property right in his employment and I cite *Sullivan v. Bd. of Police Commissioners*, 103 Ill. App. 3d 167.
>
> Accordingly this Court finds such an officer has no property right to challenge this Department's refusal to rescind his resignation.
>
> The duties of a police officer are demanding and this Court cannot presuppose upon the Department's discretion in determining how best to test the mettle of a probationary officer."

Plaintiff's timely appeal followed.

The sole issue on appeal is whether the Department's Field Training Manual created a property right in plaintiff which entitled him to a change in FTOs. Plaintiff argues that the policy set forth on pages

22 and 23 of the Department's Field Training Manual (FTO Change Policy) plus the Department's custom and practice in implementing that policy created a property right entitling him to a change in FTOs. The FTO Change Policy provided:

"The FTO Supervisor must monitor the overall training and evaluation of probationary troopers to ensure that the Field Training Officer maintains objectivity throughout his/her contact with the probationary trooper. If a personality conflict or a loss of objectivity is observed, the FTO Supervisor shall immediately counsel the FTO. If necessary, the FTO Supervisor should make appropriate changes in assignment, rotating the probationary trooper to another Field Training Officer. The decision to rotate the probationary trooper to another FTO must be fully documented and both parties informed of the reasons for the decision in order to minimize misunderstanding and possible ill feelings."

Initially, plaintiff relies on *Begg v. Moffitt* (N.D. Ill. 1983), 555 F. Supp. 1344, for the definition of "property right." In *Begg*, plaintiff, a police officer, alleged, *inter alia*, that he had been denied the opportunity to engage in part-time off-duty employment and had been denied pay increases in violation of the fourteenth amendment. Defendant moved to dismiss. In holding that plaintiff had alleged a constitutionally protected property right, the *Begg* court found that: (1) plaintiff had alleged a long-standing custom and practice of permitting outside employment; and (2) mandatory language of the contract between plaintiff's union and the city provided for pay increases based on longevity, unless there was cause for denying the increase.

■ Plaintiff's reliance on *Begg* is misplaced for several reasons. First, plaintiff relies on part of the *Begg* court's definition of property interest and conveniently overlooks that part of the definition which does not support his position. Specifically, plaintiff focuses on the *Begg* court's statement that if mutually explicit understandings exist that support a person's claim of entitlement to a benefit, that person's interest in the benefit is a property interest for due process reasons. Thus, plaintiff argues that because the FTO Change Policy was a mutually explicit understanding, he has a property interest. However, plaintiff overlooks the *Begg* court's further analysis that the standard for determining whether a property interest exists is one of cause, and in order to assert a property interest, plaintiff must establish that he cannot lose the benefit except for cause. In *Begg*, the contract between plaintiff's union and the city met this standard by creating a legitimate expectation in the benefit with mandatory language

such as "will" and "shall" and indicating that this benefit could not be denied except for cause.

■ In the present case, unlike in *Begg*, the FTO Change Policy contains both mandatory and discretionary language. The first two sentences and the last sentence are mandatory: "The FTO Supervisor must monitor the overall training and evaluation of probationary troopers to ensure that the Field Training Officer maintains objectivity throughout his/her contact with the probationary trooper. If a personality conflict or a loss of objectivity is observed, the FTO Supervisor shall immediately counsel the FTO. *** The decision to rotate the probationary trooper to another FTO must be fully documented and both parties informed of the reasons for the decision in order to minimize misunderstanding and possible ill feelings." Plaintiff does not allege that the Department violated any of the mandatory statements, *i.e.*, plaintiff did not allege that the supervisor had failed to monitor the training or that the supervisor had failed to counsel the FTO in the event of a personality conflict. With respect to the last mandatory sentence of the FTO Change Policy, because the decision to rotate FTO's was never made, that sentence is irrelevant to this case.

By contrast, the sentence in the FTO Change Policy which is pivotal to plaintiff's argument uses discretionary language: "If necessary, the FTO supervisor should make appropriate changes in assignment, rotating the probationary trooper to another Field Training Officer." On its face, the FTO Change Policy indicates that the decision to change the FTO is discretionary with the supervisor. Therefore, no legitimate expectation of the benefit exists because the benefit can be denied in the absence of cause.

■ *Begg* is further distinguishable on the ground that plaintiff in the present case has not sufficiently alleged a "long standing practice" of changing FTOs whenever a personality conflict exists. Plaintiff alleges that FTOs were changed for five of his fellow probationary officers and that the custom and practice had been verbally stated to him by his Master/Sergeant during one of the academy sessions. However, plaintiff's allegations are insufficient to show long-standing custom and practice for two reasons. First, the time period between the start of FTO training for plaintiff's academy class and plaintiff's resignation from the Department was less than two months. Thus, the FTO changes relied upon by plaintiff to establish long-standing custom and practice occurred during a two-month period at the maximum. Second, plaintiff fails to indicate how many FTO change requests had been made during the time the five were granted. The fact that five FTO changes had been granted would not establish custom

and practice if numerous such requests had been denied.

■ Plaintiff further argues that his request had not been "given any consideration ***, resulting in a forced resignation." However, the record belies this argument. Paragraph 12 of plaintiff's amended complaint states that State Trooper James Vandenbergh supported his request for a change. In addition, the last paragraph of the memo dated May 31, 1986, written to Master/Sergeant Hall from plaintiff thanked Hall "for being the only officer of the State Police to take the time to listen to my side of the situation and show genuine concern." Finally, plaintiff's resignation stated that he was resigning to "seek *** other employment" and that the resignation was executed "freely and voluntarily."

■ Plaintiff further argues that, pursuant to *Duldulao v. St. Mary of Nazareth Hospital Center* (1985), 136 Ill. App. 3d 763, 483 N.E.2d 956, *modified on other grounds* (1987), 115 Ill. 2d 482, 505 N.E.2d 314 (1987), the Department's manual created a property right in the FTO Change Policy. *Duldulao* is distinguishable from the present case on the ground that, in *Duldulao*, defendant had failed to follow mandatory procedures for discharge set forth in the employee handbook. In the present case, the relevant sentence in the FTO Change Policy is discretionary, not mandatory. Thus, even if the Department's training manual was binding upon the Department, the decision to change the FTO is still discretionary with the FTO supervisor.

■ Finally, plaintiff attempts to distinguish *Sullivan v. Board of Fire & Police Commissioners* (1981), 103 Ill. App. 3d 167, 430 N.E.2d 636, the case relied upon by the trial court in reaching its decision. Plaintiff claims that *Sullivan* has no application to the present case because it contradicted by his analysis of other cases that have established property rights based upon custom and practice. In light of the fact that plaintiff has failed to establish custom and practice, we find his distinction unpersuasive.

In *Sullivan*, plaintiff, a probationary police officer in the Village of Lisle, was discharged following a psychological examination. Plaintiff sought a declaration that his discharge was the result of the examination which, contrary to the relevant provisions of the Illinois Municipal Code, was not practical in character and did not fairly test his abilities. The *Sullivan* court held that nothing in the statute created a vested right to a certain type of exam and that the language merely established a procedure, which plaintiff had standing to assert had not been followed. However, plaintiff had not made such an assertion.

Similarly, in the present case, the FTO Change Policy creates a procedure to change FTO's in the event of a personality conflict. The FTO Change Policy mandates that the FTO supervisor monitor the training and counsel the FTO in the event of personality conflict, but it does not mandate that FTOs be changed. As stated, plaintiff did not allege that the mandated procedures had not been followed.

Our determination that the Field Training Manual did not create a property right in plaintiff which entitled him to a change in FTOs obviates the need to address the Department's alternative argument that plaintiff divested himself of any property right when he resigned from the Department.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MANNING, P.J., and O'CONNOR, J., concur.